Jeanne Ball was indicted for the murder of Nelson Todd McCray and convicted for manslaughter. Sentence was ten years' imprisonment.
 I
The defendant contends that her statement was induced by a promise of leniency and should not have been admitted into evidence at her trial.
On July 12, 1984, Birmingham Police Sergeant William T. Gaut was investigating McCray's death. He obtained information from Ray Long, a bartender at Pat's Pub, which made the defendant a suspect. Officer Gaut went to the defendant's residence and found her seated in the back seat of a patrol car. The officer read the defendant her Miranda rights and the defendant agreed to talk. Officer Gaut asked her "what happened between her and Todd McCray at the parking lot there at Pat's Pub. She said, `I don't know what you're talking about.'" The officer told the defendant that witnesses had seen her in the parking lot with McCray and that she "needed" to tell him what happened. The defendant repeatedly denied that she knew McCray, denied that she was in the parking lot, and claimed that she had been home all night.
Officer Gaut testified, "At that time I told her that as it stood then, that she was probably going to be arrested on a charge of murder and I really needed her to tell me her version of what happened."
 "A. `I believe I advised her that there was a possibility that she could be arrested for the murder. And I believe I said something to the effect of I don't know the circumstances at this point. I know that you have been accused and I know I have a witness who saw you in the car, but I really need you to tell me your side of what happened.' *Page 677 
 "Q. Did you say, `If you tell me your side, you might not be charged?'
 "A. I don't think I said that in substance, but that is what I meant."
* * * * * *
 "A. I told her that it was about a homicide. I at that point told her that this was very serious, that she could be charged with murder in this case. And that I needed for her to tell me what happened. And again she said, `She didn't know what I was talking about.'"
Officer Gaut testified that he never told the defendant that if she would talk to him, he "wouldn't make any kind of case on her or anything like that."
 "Q. But you did indicate to her that if she would tell her side of the story, she might not be charged, or words to that substance?
 "A. In substance, I believe I told her that this was a serious charge and she could possibly be charged with murder. And that I needed for her to tell me her side of the story, that I wouldn't know whether there were charges to be made unless I heard what she had to say. That is the inference."
We find no error in the admission of the defendant's confession into evidence. Officer Gaut was not attempting to bargain with or promise the defendant anything. He was simply informing the defendant of the reality of the situation and that if he did not obtain more information different from that which he already had she would be arrested.
 "The factual inquiry into voluntariness focuses on the conduct of the law enforcement officials. Although promises of leniency may make a defendant's subsequent confession involuntary, a mere statement that cooperation would be helpful to the accused will not render a subsequent confession involuntary. The promise to bring to the prosecution's attention the defendant's cooperation, the disclosure of incriminating evidence to the accused, or the silence in response to the defendant's offer to talk if the defendant's statements would not be used against him does not always render the resulting confession involuntary. A subsequent confession may be deemed involuntary if police threaten the suspect with physical harm or other dire consequences or hold him for an unreasonable time before presentment." Project: Fourteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1983-84, 73 Geo. L.J. 249, 383-84 (1984).
"A mere adjuration to speak the truth does not in itself render a confession involuntary." C. Torcia, 3 Wharton's CriminalEvidence § 674 (13th ed. 1973). "A confession induced by a promise to confer a benefit upon the accused is involuntary. Thus, a confession is involuntary when made in response to a promise to discontinue or not to commence a prosecution; a promise to mitigate punishment; or a promise to release or threat to arrest a relative of the accused." Id. at § 680. "A confession induced by a promise of leniency is involuntary." Id. at § 682.
However, even if Officer Gaut's comments to the defendant were improper, they were made after the defendant had already made her statement. Consequently, the defendant's statement was not induced by or the result of the officer's comments. Here, as in Rowe v. State, 421 So.2d 1352, 1355 (Ala.Cr.App. 1982), "the confession was not the product of a direct or implied promise. The oral confession was completed at the time [the promise of] help was mentioned and therefore the offer could not have induced the confession." See also Chatman v. State,380 So.2d 351, 354 (Ala.Cr.App. 1980) ("since any discussion of possible lenient treatment of appellant occurred after appellant's confession, no inducement to confess was present");Israel v. State, 363 So.2d 1044, 1050 (Ala.Cr.App. 1978) (promise that defendant would not be prosecuted in other cases made at a time and place separate and subsequent to confession).
 "The settled rule of this Court is that all extrajudicial confessions are presumed to be involuntary and, therefore, are prima facie inadmissible with the onus resting *Page 678 
on the prosecution to repel the imputation of undue influence unless the attending circumstances affirmatively disclose the voluntariness of the confession. Any inducement of profit or benefit held out; any hope engineered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with if he will confess; either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner which may, in their nature, generate fear or hope render it not only proper but necessary that a confession made within a reasonable time afterwards
shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made after all trace of hope or fear had been fully withdrawn or explained away and the mind of the prisoner made as free from fear, intimidation or hope for reward as if no attempt had ever been made to obtain such a confession. The true test is whether, under all the surrounding circumstances, a confession has been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such a confession must be excluded from the consideration of the jury as having been procured by undue influence." Wallace v. State, 290 Ala. 201, 204, 275 So.2d 634, 636 (1973) (emphasis added).
Considering all the surrounding circumstances, we find that the defendant's confession was voluntary.
 II
At trial, Sergeant Gaut testified before the jury. Defense counsel requested a mistrial when the officer made the following comment which counsel argues was an impermissible comment on the constitutional right of the accused to remain silent. Officer Gaut testified that he told the defendant, "`I really need for you to tell me your side of what happened here. Right now it just looks like a murder case and I really need you to talk to me.' And she said, `I really don't know what you are talking about. I have no idea what you are talking about.'And at that point she said, `Do I have the right to a lawyer?'"
(Emphasis added.)
The trial court denied the motion for a mistrial: "I don't really view it as being very serious for your client. * * * Well he [Officer Gaut] has recited to her that she has a right to a lawyer, and so forth. I think it is unfortunate, but I don't think it is mistrial material." Defense counsel refused the trial court's offer to "say something to the jury."
Here, the defendant never invoked her right against self-incrimination. She voluntarily gave a statement. Officer Gaut's testimony that, after telling him that she did not know anything about the murder, the defendant asked if she had a right to a lawyer was not a comment on the defendant's invocation of any constitutional right. Furthermore, any error in the admission of this comment was rendered harmless when defense counsel elicited subsequent testimony from Officer Gaut that, after the preliminary hearing, there was an "offer" or agreement made for the officer to meet and talk with the defendant and her counsel. The offer was to the effect that if the defendant would tell what happened she might not be charged at all. This offer was rejected by defense counsel. This subsequent testimony rendered harmless any error in Office Gaut's testimony that the defendant asked about a lawyer.
 III
The State presented substantial evidence that the defendant intentionally killed Todd McCray. At trial, it was undisputed that McCray died as a result of being stabbed with a knife. Forensic pathologist Jerome P. Tift performed an autopsy on McCray and found "four stab wounds, as well as several superficial incised wounds or cuts." There was one stab wound to the neck area and three to the chest. The largest stab wound penetrated all the way through the heart and was seven inches in *Page 679 
length. The doctor characterized the other "several superficial incised wounds" and particularly the thumb wound as being consistent with "defensive" wounds. A defense wound "is a name given to a type of wound on the hand or forearm that is often seen in individuals either with knives or gunshot wounds in a position that would be attempting to ward off an injury."
At trial, the defendant testified in her own behalf. She stated that she and McCray had been "romantically involved" for "several months." That relationship ended when McCray "went to a drug rehabilitation center for six months." When McCray returned he was violent with the defendant on several occasions.
On the night of July 12, 1984, the defendant told McCray to "please leave her alone." While they were seated in her car, she got a knife "from the floorboard or under the seat," held it up and told McCray to stay away from her and get out of her car. McCray "lunged" or "jumped" at her. Only after this did the defendant realize that McCray had been "hurt". She testified that she "never wanted to hurt him" and "didn't want to hurt him."
At trial, Katherine Cardwell testified that she was in the county jail when the defendant was brought in. She stated that "everybody was asking her (defendant) . . . what are you in for" and the defendant replied, "I killed a man," and "later said she stabbed him."
Under these facts, the question of the defendant's intent was one for the jury.
 IV
The trial court properly refused the defendant's request to charge on criminally negligent homicide. "The submission to the jury of a charge of manslaughter as a lesser included offense of murder does not necessarily entitle a defendant to a jury charge on criminally negligent homicide as a lesser included offense." Phelps v. State, 435 So.2d 158, 166 (Ala.Cr.App. 1983).
Before the closing arguments of the attorneys, the trial court informed defense counsel that he did not intend to charge on criminally negligent homicide. Defense counsel then stated: "Well, I think you ought to submit it on that lesser included. I think it is a lesser included charge and certainly due to the facts in this case." Both the prosecutor and the trial court then noted the absence of any requested charge on criminally negligent homicide. Defense counsel never did submit such a written requested charge to the court. Even had the defendant submitted a written requested charge on criminally negligent homicide, its refusal would not have been error.
Here, the defendant was not negligent in drawing the knife, in effect, threatening the victim and ordering him out of her car. It can hardly be said that the defendant was negligent and only disregarded a substantial and unjustifiable risk of which she should have been but was not aware. See Ex parte Weems,463 So.2d 170, 173 (Ala. 1984) ("In this case there was ample evidence that the defendant consciously disregarded a substantial and unjustifiable risk by carrying the pistol into the cafe. In so doing, Weems committed a `gross deviation' from the standard of conduct which would have been observed by a law-abiding person."). In the opinion of this Court, there was no rational basis for a verdict of criminally negligent homicide. Phelps, 435 So.2d at 165.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 680