George Woods was indicted for murder in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant guilty of the lesser included offense of manslaughter. He received a ten-year sentence, split to time served and the balance suspended.
Around noon on August 19, 1984, Larry Walker was sitting in his car which was parked in front of his house on Magee Street in Prichard. Walker noticed the appellant and Samuel Green, the victim in this case, sitting on the porch of the house across the street. Walker heard the two men arguing about the last drink from a bottle of liquor.
The bottle of liquor was next to the victim and the appellant grabbed it and the two men began fighting in the yard. At some point, the appellant opened a pocket knife and then closed it. The appellant then began hitting the victim in the face and beating him. After the victim had *Page 1244 
been knocked to the ground, the appellant began kicking and stomping the victim in the chest. Then the appellant kicked the victim in the head several times.
Walker got out of his car at this point and told the appellant to leave the victim alone, which he did. Walker went over to the victim and found him unconscious. He moved the victim to a shaded area and wiped the blood off the victim's face.
Josephine Hines testified that she, the appellant, the victim and Eddie Lee Jones were sitting on Jones' porch drinking on the morning in question. At one point, the appellant and the victim began arguing over some whiskey. The appellant tried to take the whiskey from the victim and the two began scuffling.
Hines went inside at this time and looked out the window. She saw the appellant hit the victim twice and saw the victim fall backwards to the ground. After the paramedics arrived, Hines saw blood on the victim. However, she was not outside prior to their arrival.
Soon after the police were called, the appellant gave Hines his knife. Hines gave the knife to the police.
George Griggs was also at Jones' house on the morning of August 19. He saw some grabbing between the two men but couldn't see much else because he is almost blind. Griggs testified that the victim wasn't bleeding until the paramedics dropped an oxygen tank on his head.
Eddie Lee Jones also testified that the victim was not bleeding until the paramedics arrived.
Willie Pearl Pritchett testified that she saw the paramedics drop an oxygen tank on the victim's head while they were attending him.
Officer Willie Flott, of the Prichard Police Department, stated that he arrived at the scene at the same time as the paramedics. The victim was lying on the ground. He was breathing hard and bleeding from the right side of the head. Flott did not see the oxygen tank fall.
Norman Raley, a firefighter, arrived with the paramedics. He said that an oxygen tank, which was sitting next to the victim, fell over onto the sidewalk at some point. He did not know if the oxygen tank hit the victim. Raley did notice some bleeding from the victim before the tank fell over.
Ronald Joseph Newman, Sr., the paramedic, basically testified as to the same facts as did Raley.
Dr. Johnathan Bard Millman performed the autopsy on the victim. The victim suffered a subdural hematoma which was the result of blunt force injury to the head. The victim survived six days on a respirator following this incident before he was declared brain dead.
Dr. Leroy Riddick reviewed the autopsy performed by Millman. He stated that an alcoholic would be more prone to suffer a subdural hematoma than would the average person. He stated less trauma would be required to induce a subdural hematoma in an alcoholic person.
The appellant stated that he and the victim began tussling over some whiskey on the morning in question. At some point, the victim hit him. The appellant "slapped" the victim and he fell to the ground. The appellant then sat down on the porch. He denied stomping or kicking the victim. Although the appellant stated he intended to hit the victim, he testified that he did not intend to hurt him.
 I
The only issue raised on appeal concerns the trial court's failure to charge the jury on criminally negligent homicide.
 "The `safer' practice is to charge upon all degrees of homicide. `(I)t is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree.' Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892), approved in Williams *Page 1245 v. State, 251 Ala. 397, 399, 39 So.2d 37 (1948).
 "The controlling principles were stated by our Supreme Court in Chavers v. State, 361 So.2d 1106, 1107 (Ala. 1978):
 "`An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala. App. 108, 180 So.2d 279 (1965). In fact, our decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however, weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So. 561
(1934).'
 "`(D)ue process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction.' Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). `Under Alabama law, the rule in non-capital cases is that a lesser included offense instruction should be given if "there is any reasonable theory from the evidence which would support the position."' Hopper, citing Fulghum, supra. By statute, `(t)he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.' Alabama Code Section 13A-1-9 (b) (1975).
 "Alabama's new criminal code divides homicide into the crimes of murder (Section 13A-6-2), manslaughter (Section 13A-6-3), and criminally negligent homicide (Section 13A-6-4). These offenses replace the old crimes of murder and manslaughter in the first and second degrees.
 "By statutory definition, a person commits the crime of manslaughter if he recklessly causes the death of another person. Section 13A-6-3 (a)(1). The reckless offender is aware of a substantial and unjustifiable risk and `consciously disregards' it. Section 18A-2-2 (3); commentary to Section 13A-2-2.
 "`A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence.' Section 13A-6-4. `A person acts with criminal negligence . . . when he fails to perceive a substantial and unjustifiable risk that the result will occur. . . .' Section 13A-2-2 (4). In both manslaughter and criminally negligent homicide `(t)he risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.' Sections 13A-2-2 (3) and (4).
 "The only difference between manslaughter under Section 13A-6-3 (a)(1) and criminally negligent homicide is the difference between recklessness and criminal negligence. `The reckless offender is aware of the risk and "consciously disregards" it. On the other hand, the criminally negligent offender is not aware of the risk created ("fails to perceive") and, therefore, cannot be guilty of consciously disregarding it.' Commentary to Section 13A-2-2. `The difference between the terms "recklessly" and "negligently", . . . is one of kind, rather than degree. Each actor creates a risk of harm. The reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it.' C. Torcia, 1 Wharton's Criminal Law Section 27 (14th ed. 1978) (emphasis in original).
 "Negligence `is distinguished from acting purposefully, knowingly, or recklessly in that it does not involve a state of awareness. It is the case where the actor *Page 1246 
creates inadvertently a risk of which he ought to be aware, considering its nature and degree, the nature and the purpose of his conduct and the care that would be exercised by a reasonable person in his situation.' Commentary to Section 13A-6-4."
Phelps v. State, 435 So.2d 158, 163-164 (Ala.Crim.App.), cert. denied, 435 So.2d 158 (Ala. 1983).
Therefore, the question before this court is whether there was any evidence presented at trial which would support a charge on criminally negligent homicide. In other words, is there any evidence that the appellant failed to perceive that the victim might die as a result of his actions? We hold that there is.
In Phelps, supra, as in the case at bar, the accused stated that, although he intentionally struck the victim, he did not intend to hurt him. Judge Bowen, in his opinion in that case, wrote:
 "[I]t could be argued that the defendant's testimony that he did not intend to hurt or kill the infant supplies some evidence that he failed to perceive the substantial and unjustifiable risk he had created and was therefore only guilty of criminally negligent homicide."
However, in spite of the accused's testimony in Phelps, supra, this court concluded that, based on the facts in that case, a charge on criminally negligent homicide was unsupported by the evidence. The victim in Phelps, supra, was an infant. The evidence was undisputed that the infant had been brutally abused on the day of his death as well as for some period of time prior to his death. The infant died from a blow "comparable to a fall `from a great height such as a second story window' with the infant landing on a `blunt but relatively concentrated object' such as the end of a broomstick or a baseball bat." Phelps, supra at 165.
This court held that Phelps' testimony that he did not intend to hurt the infant was "completely irrational" in light of these facts.
In the case at bar, the evidence is in conflict. One witness testified that the appellant repeatedly hit, kicked and stomped the victim. Another witness testified that the victim was hit twice. Still others testified to some grabbing and scuffling. The appellant contends he hit the victim only once after he had been hit and asserts he did not intend any harm to the victim. In fact, the two were good friends.
In reviewing the evidence in this case, we find that there was some evidence that the appellant failed to perceive the risk that the victim might die as a result of his actions. Certainly, it is rational that one might not be aware that a blow might cause another's death. This is particularly true in light of the testimony concerning the fall of the oxygen tank and the fact that alcoholics are more prone to subdural hematomas.
The death in this case was not the result of an accident because the act which caused the death was done intentionally.Phelps, supra, Kennedy v. State, 472 So.2d 1092 (Ala.Crim.App. 1984), affirmed, 472 So.2d 1106 (Ala. 1985). Nor was this a case of self-defense. It was a homicide.
However, there is a reasonable theory from the evidence to support a charge of criminally negligent homicide. The appellant was entitled to a charge on this offense. The trial judge's failure to do so warrants a reversal in this case.
Therefore, this cause is due to be reversed.
REVERSED AND REMANDED.
All the Judges concur. *Page 1247