The appellant, James Lovell, was indicted for the offense of murder, and a mistrial was entered when the jury announced that they were unable to reach a verdict. Following a second trial, the appellant was found guilty of manslaughter and was sentenced to 10 years' imprisonment.
Ray Hill testified that he was a friend of the victim, Thomas Naples, and that on the day of the offense, they had gone to Inez's Lounge to drink, shoot pool, and retrieve a van which Hill had left there on the previous day. He testified that he and Thomas Naples had "a lot" to drink that day. The van which Hill had come to get would not start and, therefore, Hill and the victim hooked jumper cables to the van from the car which they had driven to Inez's Lounge on the date in question. He testified that they left the vehicle running and would walk "back and forth" between the bar and the parking lot. Hill testified that he began playing a game of pool with the appellant and that they made a $10.00 bet on the game. The game ended in an argument between Mr. Hill and the appellant. Approximately 15 minutes later, Hill walked outside to check on the van and the appellant thereafter walked outside demanding $10.00 that appellant claimed that Hill owed him from the bet on the pool game. Hill testified that when he refused to pay, the appellant "started to trying to demolish the inside" of Hill's vehicle, with a crowbar. Hill further testified that when he and the appellant exited the van, the appellant drew back the crowbar as if he intended to hit Hill. Hill stated that he was unaware of Thomas Naples's location at that time. The appellant turned and walked away, without hitting Hill. Hill testified that he did not recall seeing the *Page 1348 
appellant again that day. Hill also testified that thereafter he found Thomas Naples face down on the ground between the two vehicles. He testified that he attempted to "wake" the victim and when he was unable to do so, he walked to his truck, retrieved a gun, and fired into the air.
Robert White testified that he was at Inez's Lounge on the date in question. He testified that, in his judgment, Ray Hill had been drinking, while the appellant did not appear to have been drinking. White testified that he began to play a game of pool with the appellant. Thereafter, the appellant threw his stick, shouted that "the son-of-a-bitch owes me $10.00" and walked outside. Shortly thereafter, someone walked in the bar and stated that a fight or an argument was transpiring in the parking lot. White walked outside and observed Hill and the appellant arguing about money. He testified that they were not screaming and no profanity was being used; therefore, he said, he reentered the bar. Three or four minutes later, someone walked in the bar, stating that a fight had broken out in the parking lot. He walked back outside and observed the appellant hitting the side of a van with a crowbar. Hill was yelling at the appellant to stop hitting the truck, and White testified that he approached the appellant and asked him "not to tear the man's truck up." White then started to touch the appellant on the shoulder, whereupon the appellant pulled a knife on him. White further testified that Thomas Naples was in the van and asked Hill "to pay the man" or to let him pay the man. Thereafter, the appellant made a stabbing motion into the van and White ran back into the bar to call the police. White went back outside and observed the appellant beating the victim with a crowbar.
The appellant took the stand and testified that when he left the bar in order to collect the $10.00 that Hill owed him, Hill informed the appellant that he was not going to pay him. Thereupon, he said, Hill swung the jumper cables at the appellant. The appellant testified that he then departed in his truck. Appellant testified that he drove back to the bar after remembering that someone had accompanied him to Inez's and that he had also left some change on a table inside the Lounge. He further testified that he took a knife off his dashboard and put it in his pants before driving toward the front door. Appellant testified that as he approached the bar Hill and Naples threw something which hit the top of the appellant's truck. The appellant said he then took a crowbar from the back of his truck and walked up to Hill. He testified that he did not intend to hit Hill with the crowbar, but rather "to let them see that I had something in my hand." The appellant further testified that Thomas Naples was inside the van and started to get out with some sort of tool in his hand. The appellant testified that Naples "just came right at me out the door" and, therefore, the appellant swung the crow bar and hit him. Naples fell back in the van and thereafter told the appellant to walk around the side of the van and that he would give the appellant his money. The appellant further testified that when he walked around to the side of the van, Thomas Naples jumped out and hit him on the face and the head, took the bar from him, and stated that the appellant "was dead." The appellant further testified that he was stumbling back and pulled the knife out and that when he "came up with the knife" Naples was standing there and the knife pierced his body. The appellant said that when the victim fell, he quickly left the bar and attempted to leave town.
 I.
The appellant argues that the trial court erred in failing to adequately charge the jury on self-defense. The record indicates that the following transpired during the trial court's oral charge to the jury: "The defendant has raised the defense of self-defense in this case and self-defense is a complete defense if proven." The defense counsel thereafter objected on the grounds that the trial court failed to charge the jury that there is no burden of proving self-defense on the accused. Subsequently, in response to some questions from the jury, the trial court further charged, in pertinent part: *Page 1349 
 "Now, self-defense is a complete offense or a complete defense to either murder or manslaughter if all of the elements of self-defense are there. Now, self-defense has been raised by the defendant, but the burden of proof is always on the State to prove the elements of murder and manslaughter beyond a reasonable doubt and to a moral certainty."
The appellant argues that the trial court's charge implied that the State has the burden of proving murder and manslaughter and that the defendant has the burden of proving self-defense. The State contends that any alleged error in the oral charge on self-defense is harmless because the appellant was not entitled to instructions on self-defense. We agree with the State. This court has previously held that where a portion of the trial court's oral charge pertaining to self-defense stated an incorrect proposition of the law, the error was nonetheless harmless under the facts of that case. Owen v. State,418 So.2d 214 (Ala.Cr.App. 1982). Rule 45, Ala.R.App.P. In Owen, this court held:
 "The undisputed evidence shows that the defendant was not free from fault in bringing on the difficulty and that he was, in fact, the aggressor. He could not, therefore, set up the plea of self-defense. The error in the oral charge placing too great a burden on the defendant to establish self-defense was harmless. Ragsdale v. State, 134 Ala. 24, 32 So. 674 (1901); C. Gamble, McElroy's Alabama Evidence, Section 457.02(5)(a) (3rd ed. 1977)."
Id. at 223.
"Authority is abundant for the proposition that a person who enters willingly into a fight cannot rely on self-defense if he kills his adversary. Pair v. State, 33 Ala. App. 108,31 So.2d 107, cert. denied, 249 Ala. 317, 31 So.2d 114 (1947); Key v.State, 27 Ala. App. 189, 168 So. 602 (1936); Turner v. State,11 Ala. App. 1, 65 So. 719 (1914)." Payne v. State, 421 So.2d 1303,1305 (Ala.Cr.App.), cert. quashed, 421 So.2d 1306 (Ala. 1982). "[O]ne who claims justification in the use of force must not have brought on the necessity of using it; he must have been entirely free from fault." Section 13A-3-23 Commentary,Code of Alabama (1975). "To justify conduct through a claim of self defense, the accused must neither provoke nor encourage the difficulty. Moore v. State, 364 So.2d 411 (Ala.Cr.App.), cert. denied, 364 So.2d 416 (Ala. 1978). Additionally, some form of retreat is required to establish a claim of self defense. Hambright v. State, 432 So.2d 13, 15 (Ala.Cr.App. 1983)." Finchum v. State, 461 So.2d 37, 39 (Ala.Cr.App. 1984). "In the absence of evidence warranting a finding both that the accused was in actual or apparent imminent peril and that he was unable to retreat, it is assumed that he was not in such peril and that he was able to retreat." C. Gamble, McElroy'sAlabama Evidence, § 457.02(5)(b) (3d ed. 1977).
In the present case, there is no indication that the appellant was not free to retreat; further, it appears that he entered into the fight willingly. Therefore, the appellant could not rely on the theory of self-defense.
Moreover, the appellant claimed that he did not intend to kill Thomas Naples, nor did he intend to use the knife. He stated that Thomas Naples fell forward onto the knife as the appellant was "coming up." There is no legal defense of "accidental self-defense." Timmons v. State, 487 So.2d 975
(Ala.Cr.App. 1986).
 " 'We note that "self-defense and accident are inconsistent defenses, and the defendant alone may not provide the basis for submitting such inconsistent defenses to the jury." [State v.] Randolph, 496 S.W.2d [257] at 262 [(Mo. 1973)]; [State v.] Ameen, 463 S.W.2d [843] at 845 [(Mo. 1971)]. "Taking human life in self-defense is an affirmative, positive, intentional act, and the law does not recognize the anomalous doctrine of accidental self-defense." State v. Whitchurch, 339 Mo. 116, 96 S.W.2d 30, 35 (1936) (citations omitted).' Wakefield v. State, 447 So.2d 1325, 1326
(Ala.Cr.App. 1983)."
Timmons v. State, supra, at 986.
 II.
The appellant argues that the trial court erred by refusing the following requested jury charge: *Page 1350 
 "I charge you members of the jury that the Grand Jury I referred to that returned the indictment in this case is not a jury in the same sense that you are a jury. A Grand Jury does not hear testimony as you did, from all the witnesses that you did, and the defendant is not allowed to testify and is not able to offer any evidence. A Grand Jury is not a trier of the facts and they do not judge all the facts and all the evidence as you do."
However, as the appellant concedes, the trial court made the following statement in its oral charge to the jury:
 "Now, ladies and gentlemen, the indictment that was returned in this case and has been read to you on several occasions and will be read to you again is not evidence against the defendant. As a matter of fact, the fact that this indictment was returned by a grand jury is not a circumstance to be considered against the defendant. This indictment is merely the means by which this prosecution was brought into court. It states on the one hand the formal charges brought against the defendant and advises him as to those charges that he is to be called upon to defend against at the time that this case is reached for trial."
Thus, the trial court clearly stated that the indictment was not "a circumstance to be considered against the defendant."
Further, the requested charge was incorrect and confusing. A grand jury certainly hears testimony, and may hear the testimony of every witness who is ultimately called at trial.[1] Furthermore, while a defendant in a criminal case may invoke his privilege against self-incrimination for purposes of grand jury testimony, despite the issuance of a subpoena,Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195,35 L.Ed. 1110 (1892), defendants often testify in front of a grand jury. LaFave and Scott, Criminal Procedure, § 8.10(a).
"A written requested charge should be refused if it is factually misleading or contains erroneous statements of law.Wilbanks v. State, 289 Ala. 171, 174, 266 So.2d 632 (1972);Yessick v. State, 274 Ala. 488, 491, 149 So.2d 818 (1962)."Williams v. State, 461 So.2d 834 (Ala.Cr.App. 1983), reversedon other grounds, 461 So.2d 852 (Ala. 1984). This requested charge was properly refused.
 III.
The appellant contends that the trial judge erred in refusing to give his requested charge on criminally negligent homicide. The record indicates that the trial judge charged the jury on the offense of murder and the lesser-included offense of manslaughter.
 " 'The "safer" practice is to charge upon all degrees of homicide: "[I]t is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree." Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892), approved in Williams v. State, 251 Ala. 397, 399, 39 So.2d 37 (1948).' "
Silvey v. State, 485 So.2d 790, 793 (Ala.Cr.App. 1986), quotingPhelps v. State, 435 So.2d 158, 163 (Ala.Cr.App. 1983).
 " ' "[D]ue process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction." Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). "Under Alabama law, the rule in non-capital cases is that a lesser included offense instruction should be given if 'there is any reasonable theory from the evidence which would support the position.' " Hopper, citing Fulghum [v. State, 291 Ala. 71, 277 So.2d 886 (1973).] By statute, "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for *Page 1351 
a verdict convicting the defendant of the included offense." Alabama Code Section 13A-1-9(b) (1975).' "
Woods v. State, 485 So.2d 1243, 1245 (Ala.Cr.App. 1986), quoting Phelps v. State, supra.
According to § 13A-6-4, Code of Alabama (1975), "A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence." Criminal negligence is defined by § 13A-2-2(4):
 "A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. . . ."
The concept is also dealt with in our case law:
 " 'Negligence "is distinguished from acting purposefully, knowingly, or recklessly in that it does not involve a state of awareness. It is the case where the actor creates inadvertently a risk of which he ought to be aware, considering its nature and degree, the nature and the purpose of his conduct and the care that would be exercised by a reasonable person in his situation." Commentary to Section 13A-6-4.' "
Woods v. State, supra, at 1245-46, quoting Phelps v. State,supra. Thus, a negligent actor disregards a risk of which he "should have been aware," rather than consciously disregarding such a risk as is required for recklessness. Ex parte Weems,463 So.2d 170, 172 (Ala. 1984).
This court has recently addressed the situation in which an instruction on criminally negligent homicide is required, as follows:
 "An instruction on criminally negligent homicide is proper only where the victim's death was caused by the defendant's inadvertent creation and subsequent disregard of a risk of harm of which he should have been aware, but which in fact he was not aware of. Weems v. State, 463 So.2d 170 (Ala. 1984); Phelps v. State, 435 So.2d 158 (Ala.Cr.App. 1983); Model Penal Code and Commentaries § 210.04, Comment 1. To warrant the giving of such an instruction there must be some evidence that the defendant was not aware of the risk he was creating. Wakefield v. State, 447 So.2d 1325
(Ala.Cr.App. 1983); § 13A-2-2, Code of Alabama 1975."
Wiggins v. State, 491 So.2d 1046, 1048 (Ala.Cr.App. 1986).
"Any contention that the death was accidental 'ignores the nature of the enterprise that the defendant. . . [was] engaged in.' Sanders v. State, 16 Ala. App. 511, 513, 79 So. 504 (1918). In the opinion of this Court there was no rational basis for a verdict of criminally negligent homicide. Wesley v. State,424 So.2d 648, 652 (Ala.Crim.App. 1982)." Phelps v. State,435 So.2d 158, 165 (Ala.Cr.App. 1983). Thus, this court has stated:
 "One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence. Appellant was guilty of either murder or manslaughter or he was guilty of nothing at all."
Robinson v. State, 441 So.2d 1045, 1047 (Ala.Cr.App. 1983). See also Wiggins v. State, 491 So.2d 1046 (Ala.Cr.App. 1986) (holding that there was no basis for giving a charge on criminally negligent homicide where the appellant testified that he pulled a gun merely to "scare off" the victim and that the gun discharged by accident during a struggle). Cf. Kennedyv. State, 494 So.2d 792 (Ala.Cr.App. 1986) (wherein this court found that there was a reasonable theory to support instructions as to criminal negligence where the appellant testified that she was not aware of the risk that the gun would discharge; that she was not familiar with the pistol; that she did not know the gun was loaded; that she was "afraid" of the pistol; and that she was deliberately holding the pistol in her left hand, despite the fact that she was right-handed). Where an appellant pulled a *Page 1352 
knife, "in effect, threatening the victim and ordering him out of her car," the court stated that "[i]t can hardly be said that the defendant was negligent and only disregarded a substantial and unjustifiable risk of which she should have been but was not aware." Ball v. State, 489 So.2d 675, 679
(Ala.Cr.App. 1986).
If it is the appellant's contention that he was entitled to a charge on criminally negligent homicide because he did not intend to kill the defendant, but was merely defending himself, his claim is equally without merit. "A claim of self-defense does not reduce a charge of murder or manslaughter to criminally negligent homicide." Quates v. State, 439 So.2d 199,202 (Ala.Cr.App. 1983). "The 'imperfect defense' doctrine which provided that a person committed the offense of criminally negligent homicide if he intentionally or recklessly caused the death of another person in the good faith but unreasonable belief that he had grounds for justification [self-defense] has been rejected by the Alabama legislature." Gwin v. State,425 So.2d 500, 510 (Ala.Cr.App. 1982), citing § 13A-6-4 Commentary,Code of Alabama (1975). See also Quates v. State, supra, at 202; Wyllie v. State, 445 So.2d 958, 962 (Ala.Cr.App. 1983).
Even if there had been evidence that the killing was the result of mere criminal negligence, the trial court's failure to instruct on criminally negligent homicide would not warrant a reversal. "Any speculation that the jury might have found the defendant guilty of criminally negligent homicide is dissipated by the fact that they found him guilty of intentional murder. [Citations omitted.] In Howell v. State, [431 So.2d 1328 (Ala. 1983)], our Supreme Court recognized that the statute on criminal negligence rejects and is inconsistent with a specific intent to commit an offense." Phelps v. State, supra, at 167.
AFFIRMED.
All the Judges concur.
[1] The grand jury's authority to compel testimony is accepted "not simply because it is 'historically grounded' but because the 'obligation of every person to appear and give testimony' is 'indispensable to the administration of justice.' " LaFave and Israel, Criminal Procedure,§ 8-6, quoting from UnitedStates v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67
(1973).