COBB, Judge.
Doyce Wade Gargus was convicted of reckless manslaughter, a violation of § 13A-6-3, Ala.Code 1975. He was sentenced to 20 years in prison. On appeal, Gargus contends that the trial court erred when it refused to instruct the jury as to the lesser-included offense of criminally negligent homicide.
The State presented the following evidence at trial. On Thanksgiving night, November 28, 1996, Gargus and Michael Workman, Gargus’s cousin, played a couple of games of pool in a utility building behind Gargus’s house. Gargus’s wife, Kandice Gargus, and Kandice’s cousin, Heather Danielle Elrod, were watching them. Testimony was presented indicating that Gargus had been drinking beer. (R. 154-67.) After the men finished playing pool, Gargus grabbed Kandice and began dancing provocatively with her, telling her that he danced 'in this manner with other girls at clubs. Kandice appeared upset and announced that she was going to bed. Gargus ordered her to sit down, and she did. (R. 168-74, 377, 384.) Elrod testified that Gargus then slapped Kandice across the face three times, telling her to hit him after each slap and that Kandice slapped him after the third hit. After Kandice slapped Gargus, he said to her, “See, you don’t trust me.” (R. 175, 394.) Kandice said nothing in response. Gargus retrieved a revolver from a shelf in the utility building. Elrod testified that Gar-gus opened the chamber, dumped the bullets out of the chamber, and placed one bullet inside the chamber. He closed the chamber without twirling it, placed the revolver in his mouth, cocked the hammer, and pulled the trigger two or three times. (R. 390.) No bullets were fired. Gargus cocked the hammer again, pointed the revolver at Kandice, and pulled the trigger. The revolver fired, shooting Kandice in the head. (R. 176-80, 370-72, 377.) At the time that Kandice was shot, Gargus was approximately three feet away from her. (R. 181-86, 325.) Kandice’s stepfather, Walter Clyde Burns, Jr., testified that Gargus telephoned him and said that he had shot Kandice. (R. 216.) Burns and Kandice’s mother went to Gargus’s house. When Burns entered the utility building, he found Gargus lying on top of Kandice’s body. Burns spotted the revolver on the floor surrounded by four bullets, and El-rod stated that the revolver had only one bullet in it when it was fired. (R. 217-19.) Burns pulled Gargus off of Kandice, and the police arrived. When Wayne Sims, a police officer with the Gadsden Police Department, arrived on the scene, Gargus was repeatedly saying that he had shot Kandice but that he did not intend to shoot her. (R. 231, 240.) Kandice was still breathing, but she had a severe gunshot wound on the top of her head. Officer Sims testified that even though Gargus had been drinking, he did not appear to be drunk. (R. 232-38, 245.) He further testified that a gunman using a revolver can usually see where the bullets are located in the chamber. (R. 252.) A firearms examiner testified that the revolver taken from the crime scene could not have fired unless the trigger had been pulled. (R. 273-77.) Keith Blackwell, another police officer with the Gadsden Police Department, went to the hospital to take pictures of Kandice; when he arrived, she was already dead. (R. 303.) The forensic pathologist testified that Kandice died as the result of a gunshot wound to her brain. (R. 319-25.)
Workman and Gargus testified for the defense. Workman testified that he could *567 see a bullet in the chamber of the revolver when Gargus was pointing it at Kandice. (R. 370.) He also testified that Gargus and Kandice had had a disagreement over Gargus’s dancing with other women and that Gargus had forced Kandice to dance with him. (R. 376-77, 383.) In addition, both Workman and Gargus testified that earlier that day, Gargus had allowed Workman to shoot the revolver once, and after this shot, Gargus had replaced the bullet, so that the gun was loaded with five bullets. (R. 386, 419.) Gargus testified that he did not slap Kandice, that he did not know that the revolver was loaded, and that his shooting Kandice was an accident. He did testify, however, that he was acting foolishly and that he knew that if his revolver was loaded and pointed at someone, he could kill someone if he fired the revolver. (R. 427-29.) In addition, he testified that the revolver was pointed in her direction and that the only way for the revolver to fire was for him to intentionally pull the trigger, and that he pulled the trigger when the revolver was pointed at his wife’s face. (R. 444-45.) Gargus knew that the revolver was made to kill people, but Gargus never checked to see if the revolver was, in fact, unloaded, stating that he consciously disregarded this risk. (R. 428, 439.)
Gargus was charged with murder and with reckless manslaughter in the indictment, and the trial judge instructed the jury as to both offenses. (R. 586-90.) Gargus requested a jury charge on criminally negligent homicide. He argued that such an instruction was warranted because, he said, he did not perceive the danger before he pulled the trigger. Specifically, he argued that he did not perceive the danger because he did not know that the revolver was loaded. (R. 455-56.) The trial judge denied this request, citing Berry v. State, 698 So.2d 225 (Ala.Cr.App.1996). (R. 477-82.)
An accused is entitled to an instruction on a lesser-included offense when there is a reasonable theory from the evidence supporting his position, however doubtful or weak in credibility. See Chavers v. State, 361 So.2d 1106, 1107 (Ala.1978.) Moreover, a trial judge “is vested with broad discretion in formulating its charge, so long as it accurately reflects the law.” Clark v. State, 621 So.2d 309, 324 (Ala.Cr.App.1992).
Pursuant to § 13A-6-4, Ala.Code 1975, “[a] person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence.” Section 13A-2-2(4), Ala.Code 1975, provides:
“A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists.”
See, also, Berry, 698 So.2d at 226. In order to warrant the giving of a jury instruction on criminally negligent homicide, “there must be some evidence that the defendant was not aware of the risk he was creating.” McLaughlin v. State, 586 So.2d 267, 272 (Ala.Cr.App.1991) (citing Wakefield v. State, 447 So.2d 1325 (Ala.Cr.App.1983)).
A review of the record indicates that an instruction on criminally negligent homicide was unwarranted. Gargus’s own testimony indicates that he was aware of the risk his actions were creating. He testified that he knew that he had the capability of killing someone if he pointed his revolver at someone and pulled the trigger. He testified that when he was pointing the revolver at Kandice’s face, he consciously pulled the trigger. He further testified that he was acting foolishly and consciously disregarded the risk that the revolver was loaded. Gargus’s testimony also indicated that he never checked to ensure that the revolver was, in fact, unloaded before he pulled the trigger. The State presented evidence showing that Gargus would have been able to determine *568 that the revolver contained a bullet by merely looking at the chamber. In addition, the two eyewitnesses to the shooting testified that they knew that the revolver contained one bullet when Gargus pulled the trigger. Gargus’s testimony and the other evidence presented at trial indicate that Gargus was aware of the risk of his behavior; therefore, the trial judge correctly refused to give an instruction on criminally negligent homicide.
Moreover, we have held that “ ‘[a] killing is not accidental when the act causing death is done intentionally.’ ” Lawson v. State, 476 So.2d 116, 118 (Ala.Cr.App.1985)(quoting Phelps v. State, 436 So.2d 158, 166 (Ala.Cr.App.1983)). Gargus’s actions of pointing the revolver at Kandice and pulling the trigger were intentional; thus, he did not create a risk inadvertently. In addition, Gargus’s act of pointing a revolver at someone was, at the least, a reckless act. See Burgess v. State, [Ms. CR-94-0475, December 18, 1998] — So.2d -(Ala.Cr.App.1998); Berry, 698 So.2d at 226 (“the accused’s action of drawing a gun eradicates the possibility that a subsequent shooting of that gun was unintentional and that the resulting death was criminally negligent homicide”); and Lovell v. State, 521 So.2d 1346, 1351 (Ala.Cr.App.1987) (“‘One who intentionally draws a gun ... is certainly aware of the risk that the gun might discharge.’ ”).
For the above-mentioned reasons, the judgment of the Circuit Court of Etowah County is due to be, and is hereby, affirmed.
AFFIRMED
LONG, P.J., and McMILLAN, BASCHAB, and FRY, JJ., concur.