The appellant, Gregory Thaddeus Koppersmith, was charged with murder for the death of his wife, Cynthia ("Cindy") Michel Koppersmith. He was convicted of reckless manslaughter, a violation of § 13A-6-3(a)(1), Ala. Code 1975, and the trial court sentenced him to 20 years in prison.
The evidence showed that the appellant and his wife were arguing in the yard outside of their residence. Cindy tried to enter the house to end the argument, but the appellant prevented her from going inside. A physical confrontation ensued, and Cindy fell off of a porch into the yard. She died as a result of a skull fracture to the back of her head.
In a statement he made to law enforcement officials after the incident, the appellant gave the following summary of the events leading up to Cindy's death. He *Page 207 
and Cindy had been arguing and were on a porch outside of their residence. Cindy had wanted to go inside the house, but he had wanted to resolve the argument first. As she tried to go inside, he stepped in front of her and pushed her back. Cindy punched at him, and he grabbed her. When Cindy tried to go inside again, he wrapped his arms around her from behind to stop her. Cindy bit him on the arm, and he "slung" her to the ground. He then jumped down and straddled her, stating that he "had her by the head" and indicating that he moved her head up and down, as if slamming it into the ground. When Cindy stopped struggling, he rolled her over and found a brick covered with blood under her head. The appellant stated that, although Cindy fell near a flowerbed, he did not know there were bricks in the grass.
At trial, the appellant testified that Cindy had tried to go into the house two or three times, but he had stopped her from doing so. During that time, she punched at him and he pushed her away from him. At one point, he put his arms around her from behind to restrain her, and she turned her head and bit him. When she bit him, he pulled her by her sweater and she tripped. He then "slung" her off of him, and she tripped and fell three to four feet to the ground. He jumped off of the porch and straddled her, grabbing her by the shoulders and telling her to calm down. When he realized she was not moving, he lifted her head and noticed blood all over his hands.
The appellant testified that, when he grabbed Cindy from behind, he did not intend to harm her. He also testified that, when he "slung" her away from him off of the porch, he was not trying to hurt her and did not intend to throw her onto a brick. Rather, he stated that he simply reacted after she bit his arm. He also testified that he did not know there were bricks in the yard, that he had not attempted to throw her in a particular direction, and that he was not aware of any risk or harm his actions might cause. He further testified that, when he grabbed and shook her after she fell, he did not intend to harm her, he did not know there was a brick under her head, and he did not intend to hit her head on a brick or anything else. Instead, he testified that he was trying to get her to calm down.
The medical examiner, Dr. Gregory Wanger, testified that the pattern on the injury to the victim's skull matched the pattern on one of the bricks found at the scene. He stated that, based on the position of the skull fracture and the bruising to the victim's brain, the victim's head was moving when it sustained the injury. He testified that her injuries could have been caused by her falling off of the porch and hitting her head on a brick or from her head being slammed into a brick.
The indictment in this case alleged that the appellant "did, with the intent to cause the death of Cynthia Michel Koppersmith, cause the death of Cynthia Michel Koppersmith, by striking her head against a brick, in violation of § 13A-6-2 of the Code ofAlabama." (C.R. 11.) The appellant requested that the trial court instruct the jury on criminally negligent homicide as a lesser included offense of murder. However, the trial court denied that request, and it instructed the jury only on the offense of reckless manslaughter.
The appellant argues that the trial court erred in denying his request that it instruct the jury on criminally negligent homicide.[1] *Page 208 
 "`"An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala. App. 108, 180 So.2d 279 (1965). In fact, our decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however, weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So. 561 (1934).'"
Woods v. State, 485 So.2d 1243, 1245 (Ala.Crim.App. 1986) (quotingPhelps v. State, 435 So.2d 158, 163-64 (Ala.Crim.App. 1983)). Section 13A-6-3(a), Ala. Code 1975, provides that a person commits the crime of manslaughter if he recklessly causes the death of another person.
 "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of Section 13A-3-2 acts recklessly with respect thereto."
§ 13A-2-2(3), Ala. Code 1975. "A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence." § 13A-6-4(a), Ala. Code 1975.
 "A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. A court or jury may consider statutes or ordinances regulating the defendant's conduct as bearing upon the question of criminal negligence."
§ 13A-2-2(4), Ala. Code 1975. In Woods, we explained:
 "`The only difference between manslaughter under Section 13A-6-3(a)(1) and criminally negligent homicide is the difference between recklessness and criminal negligence. "The reckless offender is aware of the risk and `consciously disregards' it. On the other hand, the criminally negligent offender is not aware of the risk created ('fails to perceive') and, therefore, cannot be guilty of consciously disregarding it." Commentary to Section 13A-2-2. "The difference between the terms `recklessly' and `negligently', . . . is one of kind, rather than degree. Each actor creates a risk or harm. The reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it." C. Torcia, 1 Wharton's Criminal Law
Section 27 (14th ed. 1978) (emphasis in original). *Page 209 
 "`Negligence" is distinguished from acting purposefully, knowingly, or recklessly in that it does not involve a state of awareness. It is the case where the actor creates inadvertently a risk of which he ought to be aware, considering its nature and degree, the nature and the purpose of his conduct and the care that would be exercised by a reasonable person in his situation." Commentary to Section 13A-6-4.'"
485 So.2d at 1245-46 (quoting Phelps v. State, 435 So.2d 158,163-64 (Ala.Crim.App. 1983)).
Thus, we must determine whether there was any evidence before the jury from which it could have concluded that the appellant did not perceive that his wife might die as a result of his actions. We conclude that there was evidence from which the jury could have reasonably believed that his conduct that caused her to fall was unintentional and that he was not aware he was creating a risk to his wife. He testified that, after she bit him, his reaction — which caused her to fall to the ground — was simply reflexive. He also testified that he did not know there were bricks in the yard. Even in his statement to the police in which he said he was slamming her head against the ground, the appellant said he did not know at that time that there was a brick under her head. Finally, he stated that he did not intend to throw her onto a brick or harm her in any way when he "slung" her, and that he did not intend to hit her head on a brick or otherwise harm her when he grabbed and shook her after she had fallen. As we held in Woods, "there was some evidence that the appellant failed to perceive the risk that the victim might die as a result of his actions." 485 So.2d at 1246. Because there was a reasonable theory from the evidence that would have supported giving a jury instruction on criminally negligent homicide, the trial court erred in refusing to instruct the jury on criminally negligent homicide. Thus, we must reverse the trial court's judgment and remand this case for a new trial.
REVERSED AND REMANDED.
Long, P.J., and McMillan, Cobb, and Fry, JJ., concur.
[1] During the first trial of this case, the trial court instructed the jury on murder, reckless manslaughter, and criminally negligent homicide, and the jury found the appellant guilty of reckless manslaughter. The Alabama Supreme Court reversed his conviction, holding that the trial court had improperly refused to allow the appellant to testify on direct examination about his intent when he shook his wife after she had fallen to the ground. Ex parte Koppersmith, 701 So.2d 821 (Ala. 1997). Specifically, the supreme court stated that "[t]he excluded testimony would have gone directly to the issue of whether Koppersmith was `consciously aware' of the substantial and unjustifiable risk associated with banging the victim's head against the bricks, or whether this risk was just one of which the defendant should have been aware." Id. at 822. The present appeal is from the second trial of this case. *Page 792