*374 WELCH, Judge,
dissenting.
John Frederick Burton appealed from his conviction for manslaughter, a violation of § 13A-6-3, Ala.Code 1975, and his sentence of 17 years in prison. Burton was originally indicted by a Mobile County grand jury for murder but was ultimately convicted of the lesser-included offense of manslaughter. Burton did not file any postjudgment motions. Burton preserved the trial court’s denial of his request for a jury charge on criminal negligence by objecting to the denial and stating his grounds for the instruction before the jury retired to deliberate. On appeal, this Court, in its unpublished memorandum, affirms the trial court’s denial of Burton’s requested criminal-negligence instruction, holding that the record did not indicate that Burton was negligent when he killed the victim, Francisco Randolph. For the reasons stated below, I must respectfully dissent.
The following summary of the facts is taken from the majority’s unpublished memorandum:
“On September 8, 2007, the victim, Francisco Randolph, called Burton and asked if he could accompany Burton to his female impersonator show that evening. Randolph drove Burton’s truck so that Burton could prepare for the show. Burton believed that Randolph had been drinking; however, he did not believe that Randolph was too impaired to drive. When it was time to perform, Burton could not locate Randolph and noticed that his truck was missing.
“Randolph left the club in Burton’s truck and went to Janice Nicholson’s house. They went to the store in Burton’s truck in which Nicholson observed fake fingernails, scissors, and a file.
“Randolph returned to the Rainbow Lounge and appeared to be too intoxicated to drive. After Burton finished his performance and received his money, he left the Rainbow Lounge with James Gray, Timothy McGee, and Randolph, with Gray driving. Burton was angry that Randolph had taken his truck without permission. Randolph apologized, but Burton was still angry and threw a soft drink on Randolph. At a stop light, the two men exited the vehicle and continued to argue. Gray stated that ‘[Randolph] was walking toward [Burton] and [Burton] was flinching, flicking the scissors, like, [Randolph], don’t come close to me, don’t come close to me. And [Randolph] walked into the — he walked into the scissors.’ (R. 166). Gray and McGee both saw Burton with scissors in his hand, but did not see anything in Randolph’s hand. Burton claimed that he picked up the scissors to move them and noticed that Randolph was ‘charging1 at him and ran into the scissors. (R. 491-93.)
“As Randolph was attempting to reenter the truck, Burton hit him with the door. Randolph said that he had been stabbed and needed to be taken to the hospital. Once in the truck, Randolph continued to complain and Burton threatened to make him get out of the vehicle and eventually did so. Burton told Gray to drive off.
“As they were leaving, McGee turned around and saw Randolph fall onto the ground and convinced Burton to go back and get Randolph. By the time they got Randolph into the vehicle, he was unresponsive and bleeding from a gash in his chin and a wound in his chest. Randolph had a stab wound to his chest over the left nipple, which was consistent with being stabbed with open scissors. The stab wound penetrated Randolph’s rib cage and heart.”
Citing Ball v. State, 489 So.2d 675 (Ala.Crim.App.1986), the majority holds in its *375 memorandum that the record did not indicate that Burton was acting negligently when he killed Randolph because, it reasons, the record “establishes that Burton had been ‘flicking’ the scissors at Randolph as a warning and that he intentionally held up his hands while holding the scissors as Randolph was ‘charging’ at him. (R. 166, 492-93.)” The majority also based its ruling on the testimony at trial that after the stabbing, Burton refused to take Randolph to the hospital and that he forced Randolph out of the truck.
However, at trial, Burton testified to the following on his own behalf. On the night of the stabbing, Burton was using scissors to cut his fingernails, and when he got out of the truck, he placed the scissors on the seat of the vehicle. (R. 487.) Randolph and Burton began arguing outside and toward the rear of the truck, and both men began to throw punches. (R. 489.) Burton then backed up and told Randolph, “ Tou know what ... I [sic] just leave you where you’re at and you just walk home and I’ll see you tomorrow.’ ” (R. 489.) Burton began to walk back to the front of the truck, but Randolph came up behind him. (R. 490.) As Burton picked up the scissors from the seat in order to sit down, Randolph ran toward the opened pair of scissors Burton was holding. (R. 491-92.) Randolph then told Burton that he was “ ‘stupid as hell’ ” and got back in the truck. (R. 498.) After a minute or so, Randolph stated, “ ‘John, I think you cut me.’ ” (R. 493.) Burton replied, “ ‘Carlos ... be quiet ... [t]here you go trying to get attention again. I didn’t cut you.’ ” (R. 493.) Burton testified that Randolph was wearing a black shirt and that he could not see any blood on his clothing. (R. 493-94.) Randolph continued to insist that he was injured, but Burton did not believe him, became irritated, and asked Randolph to get out of the vehicle. (R. 494.) Randolph got out of the truck. (R. 495.) The men drove about a quarter of a mile when one of the other passengers stated that he saw Randolph fall in the street. (R. 495-96.) They turned the vehicle around, returned to Randolph, got out of the vehicle, and saw that Randolph was bleeding and nonresponsive. (R. 496-97.) Burton then picked up Randolph, and put him in the truck, and they drove Randolph to the hospital. (R. 498.)
In Alabama, “[a] person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists.” § 13A-2-2(4), Ala.Code 1975. “In order to warrant the giving of a jury instruction on criminally negligent homicide, ‘there must be some evidence that the defendant was not aware of the risk he was creating.’ ” Gargus v. State, 764 So.2d 565, 567 (Ala.Crim.App.1999) (quoting McLaughlin v. State, 586 So.2d 267, 272 (Ala.Crim.App.1991)), overruled on other grounds, Quinlivan v. State, 627 So.2d 1082 (Ala.Crim.App.1992). “ ‘An instruction on criminally negligent homicide is proper only where the victim’s death was caused by the defendant’s inadvertent creation and subsequent disregard of a risk of harm of which he should have been aware, but which in fact he was not aware of.’ ” Akin v. State, 698 So.2d 228, 233 (Ala.Crim.App.1996) (quoting Wiggins v. State, 491 So.2d 1046, 1048 (Ala.Crim.App.1986)).
In Bridges v. State, 504 So.2d 1223 (Ala.Crim.App.1987), the defense proffered a theory at trial that the victim was accidentally pushed onto a knife held by the defendant. This Court held that because the theory proffered by the defendant was reasonable and because there was evidence of intoxication, a jury charge was required on *376 the lesser-included offenses of manslaughter and criminally negligent homicide.
Further, in Koppersmith v. State, 742 So.2d 206 (Ala.Crim.App.1999), the defendant testified at trial that his wife bit him before he reflexively caused her to fall to the ground, unaware that there was a brick under his wife’s head when he slammed her head against the ground. This Court held that this theory warranted a jury charge on criminally negligent homicide because the jury could have reasonably concluded that the defendant did not perceive that his wife might die of his actions.
By contrast, in Akin v. State, 698 So.2d 228, 234 (Ala.Crim.App.1996), this Court held that a jury charge on criminal negligence was not warranted because “the appellant intentionally injected the victim with an overdose of lidocaine with the intent to kill him or to induce in him a ‘flat line.’ ” In Akin, there was evidence presented from which the jury could have found that the appellant was aware of the consequences of his actions. See also Berry v. State, 698 So.2d 225 (Ala.Crim.App.1996).
Here, as in Koppersmith and Bridges, there is a rational basis for a verdict of criminally negligent homicide. See Lawson v. State, 476 So.2d 116, 119 (Ala.Crim.App.1985). Burton testified that he was using scissors to clip his fingernails before the argument began outside the vehicle and that upon reentering the vehicle, he was merely moving the scissors to sit down when Randolph rushed upon the scissors, a much less intentional act than the act committed in Alcin.
Further, Burton testified that he thought that Randolph was joking when he said that he was wounded and that before Randolph got out of the car, he did not see any blood on Randolph’s black shirt. Randolph got out of the vehicle of his own volition, and once one of the other passengers saw Randolph fall to the ground, they returned to assist Randolph. Finally, Burton testified that he placed Randolph in the vehicle himself to take him to the hospital. The majority cites Ball in its memorandum because in Ball this Court held that there was no rational basis for a verdict of criminally negligent homicide. However, in Ball, the victim was stabbed at least four times, whereas Randolph’s autopsy revealed that he had one chest stab wound, penetrating the heart, which was consistent with a pair of open scissors, and a small cut to the chin, which could have been caused from a fall to the ground. (R. 315, 319, 325.) Because this Court need not believe Burton’s testimony of the incident but must only find his theory of defense reasonable, I believe that there was sufficient evidence to warrant a jury charge on criminal negligence and that the trial court erred in refusing to give such a charge.
Therefore, for the reasons stated above, I must dissent from the majority’s unpublished memorandum affirming Burton’s conviction.