Appellant, James Hugh Jones, was indicted for murder, in violation of § 13A-6-2, Code of Alabama 1975, by the Mobile County grand jury in September 1981. He was found guilty by a jury on July 9, 1982, of the offense charged in the indictment, and he was sentenced to imprisonment *Page 1062 
in the penitentiary for twenty-five years. A notice of appeal was timely filed; however, due to the appeal not being properly perfected by the filing of a transcript, we dismissed the appeal on March 20, 1984. Jones v.State, 447 So.2d 871 (Ala.Cr.App. 1984). Thereafter, appellant sought relief by way of a petition for writ of error coram nobis, claiming, inter alia, ineffective assistance of counsel, for counsel's failure to take the necessary steps to perfect his appeal. His petition was denied by the trial court, after a hearing; however, we reversed, finding that counsel was ineffective, and ordered that appellant be granted an out-of-time appeal. Jones v.State, 495 So.2d 722 (Ala.Cr.App. 1986). We also ordered appointment of counsel to represent appellant on appeal, and the filing of a complete record of the trial proceedings. The record having been filed and the case having been submitted on briefs of the parties, the out-of-time appeal is now properly before us for our consideration. Appellant raises four issues on appeal.
 I
Appellant first contends that reversible error was committed when the trial court refused to charge the jury that criminally negligent homicide is a lesser included offense of the charge of murder.
Ingrid Delilah Sims testified that she lived with her sister, Anastasia Sims, and Anastasia's two children. She stated that appellant was the father of one of the children. She testified that around 8:30 p.m. on November 20, 1980, appellant came to the door of their home, apparently to see her sister, Anastasia. There is some evidence that appellant called Anastasia on the telephone earlier in the evening. Ingrid observed that Anastasia answered the door and went outside with appellant. After appellant and Anastasia had been outside a few minutes, she heard them loudly "fussing" and "arguing." Then about five minutes later, she heard a gunshot and a scream. She went outside to investigate and observed appellant drive away in his car at a high rate of speed. She observed no one else around. About twenty to thirty minutes later, appellant telephoned. Ingrid's mother answered, and Ingrid listened on the extension. Appellant stated that he was calling from the hospital and that Anastasia had been shot and was at the hospital. According to Ingrid, he also stated that Anastasia had "walked out the door and someone shot her." However, he also explained, as follows: "[T]he gun he had, he had it between his legs. It fell on the sidewalk and went off by itself." Anastasia died a short time later at the hospital.
Ronald Dyal, an officer with the Mobile police department, testified that on the evening of November 20, at about 11:00 p.m., he observed appellant drive up to the emergency entrance of the University of Alabama Medical Center, seeking treatment for a wounded female, who was in his automobile. Shortly thereafter, Dyal placed appellant under arrest, and properly advised him of his Miranda rights.Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). Dyal testified that appellant told him that the wounded female and he had been involved in a domestic altercation and that one or the other (Dyal could not remember which) produced a weapon and, during a struggle, the weapon had discharged, striking the female. Dyal further testified that appellant gave two different stories about what happened to the pistol: Appellant first stated that in his haste to get the victim to the hospital, the pistol was left at the scene, and later stated that he had thrown the pistol out the window of his automobile on the way to the hospital. A search was made for the pistol, but it was never found. When appellant exited from his automobile at the hospital, a .38-caliber shell casing apparently fell out of his vehicle.
Sergeant Eugene Ganoe, a detective with the Mobile police department, testified that he interviewed appellant at the police headquarters around midnight on November 20. He advised appellant of his Miranda rights and appellant, after waiving those rights, made a statement concerning the incident. According to Ganoe, appellant stated that "he and his girlfriend were in the front *Page 1063 
yard of the house, that she had backed into him, and the gun discharged accidentally."
Sergeant O.C. Lockett of the Mobile police department testified that he was present during the interview with appellant at the police headquarters. His recollection of what appellant said was as follows: "[H]e and the deceased were having words. . . . That when the actual shooting occurred they were on the front porch and she was ahead of him and had attempted to back up to him. That he had the pistol in his belt and was trying to remove it at the time it discharged." Lockett further stated, "He didn't say he was trying to remove it in an aggressive manner to shoot her, he was trying to get it out of the way or something of that nature."
Dr. Leroy Riddick, a forensic pathologist, performed an autopsy on the body of the victim, Anastasia Sims. His testimony disclosed that the bullet entered about the middle of her back and exited under her chin. The bullet did severe damage to her spinal column and severed her jugular vein. These injuries caused her death.
Appellant testified that he went to Anastasia Sims's house on the night of November 20 to pay her $50.00, which he had previously borrowed from her; that he knocked on the door and called her outside; that after talking with her for approximately ten minutes, a man whom he did not know came up and said to Anastasia, "What are you doing out here talking to this nigger?"; that Anastasia was between appellant and the stranger and was facing appellant and pushing him backward; and that the stranger pulled a pistol, fired a shot, and ran. He stated that Anastasia fell and that he picked her up, placed her in his automobile, and rushed her to the hospital. He testified that he telephoned Anastasia's mother from the hospital and told her that Anastasia had been shot and that another man had walked up in the yard and shot her. He denied telling her that he had dropped the gun and that it had gone off. He denied telling the police that he had thrown the gun out of his automobile. He stated that he may have told the police that the shooting was an accident since he believed the stranger was shooting at him and accidentally hit Anastasia. He denied making a statement to Sergeant Ganoe, denied making the statement which was attributed to him by Officer Dyal as having been made at the hospital, and stated that he told the officer at the hospital that another man had shot Anastasia, but the officer told him to shut up, that they did not want to hear that. He testified that, after being told by the officer to shut up, he did not open his mouth thereafter because he felt that they would not listen to him. On cross-examination, he denied having had an argument with Anastasia about two weeks before the shooting and denied threatening to kill her.
Ingrid Delilah Sims was recalled as a rebuttal witness for the State and testified that she had witnessed an argument between appellant and Anastasia a "week or two" before the shooting and that she had heard appellant say at that time that he would blow her sister's "MF head off." She also testified that, at the time of the shooting, the relationship between appellant and her sister was bad and that her sister was trying to "break off" the relationship.
A person accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Wiggins v. State,491 So.2d 1046 (Ala.Cr.App. 1986); Chavers v. State,361 So.2d 1106 (Ala. 1978); Fulghum v. State,291 Ala. 71, 277 So.2d 886 (1973). This rule applies regardless of whether the State or defendant offers the evidence.Pruitt v. State, 457 So.2d 456 (Ala. 1984). Even if the defendant denies the charge in toto, but the evidence presented by the State suggests a reasonable theory supporting a charge on a lesser offense, the trial court is obliged to give a charge on the lesser offense when requested. Pruitt v. State. A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense or (2) *Page 1064 
the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala. App. 108,180 So.2d 279, cert. denied, 278 Ala. 710, 180 So.2d 282
(1965). Every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Chaversv. State, supra; Burns v. State, 229 Ala. 68,155 So. 561 (1934). Section 13A-1-9(b) provides, "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
 "The 'safer' practice is to charge upon all degrees of homicide: '[I]t is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree.' Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892), approved in Williams v. State, 251 Ala. 397, 399, 39 So.2d 37 (1948)."
Phelps v. State, 435 So.2d 158, 163 (Ala.Cr.App. 1983).
In the instant case, the trial court charged the jury on the elements of the offense of murder and of the lesser included offense of manslaughter. As to manslaughter, the trial court charged the jury as follows:
 "[T]o sustain the charge of manslaughter in this case, the State by the evidence must prove beyond a reasonable doubt each of the following elements of this offense. First, that Anastasia Marie Sims is dead. Second, that the Defendant, James Hugh Jones, caused the death of Anastasia Marie Sims, that is, Anastasia Marie Sims died as a result of being shot with a gun by the defendant, James Hugh Jones. Third, that in so doing, the Defendant acted recklessly and thereby caused the death of Anastasia Marie Sims.
 "Now, the Court will further instruct you that a person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and justified [sic] risk that the result will occur or that the circumstances exist. The risk must be of such nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."
The trial court declined to charge the jury on criminally negligent homicide as a lesser included offense. The submission to the jury of manslaughter as a lesser included offense of murder does not necessarily entitle a defendant to a jury charge on criminally negligent homicide as a lesser included offense. Hurst v. State, 469 So.2d 720
(Ala.Cr.App. 1985); Phelps v. State. Appellant argues that there was evidence from appellant's statement to the officer that as appellant pulled the gun from his pants, it discharged, striking the victim, and that a jury could have believed that to have been the case, particularly since there were no eyewitnesses and the evidence was circumstantial. He argues that this version of the incident would support a reasonable theory of criminally negligent homicide.
Section 13A-6-4, in effect on the date of the incident giving rise to the instant case, defines criminally negligent homicide, in pertinent part, as follows:
 "(a) A person commits the crime of criminally negligent homicide if:
 "(1) He causes the death of another person by criminal negligence; . . ."
Section 13A-2-2(4) defines criminal negligence, as follows:
 ". . . A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. . . ." *Page 1065 
The only difference between manslaughter under §13A-6-3(a)(1) and criminally negligent homicide is the difference between recklessness and criminal negligence.
 "A common denominator in both is that in each instance the underlying conduct must involve a 'substantial and unjustifiable risk' that a result or circumstance described in the penal statute will occur or exists. The reckless offender is aware of the risk and 'consciously disregards' it. On the other hand, the criminally negligent offender is not aware of the risk created ('fails to perceive') and, therefore, cannot be guilty of consciously disregarding it."
Commentary to § 13A-2-2, Code of Alabama 1975.
 "The difference between the terms 'recklessly' and 'negligently,'. . . is one of kind, rather than degree. Each actor creates a risk
of harm. The reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it."
C. Torcia, 1 Wharton's Criminal Law, § 27 (14th ed. 1978) (emphasis in original).
 "Negligence 'is distinguished from acting purposefully, knowingly, or recklessly in that it does not involve a state of awareness. It is the case where the actor creates inadvertently a risk of which he ought to be aware, considering its nature and degree, the nature and the purpose of his conduct and the care that would be exercised by a reasonable person in his situation.' Commentary to Section 13A-6-4."
Phelps v. State, 435 So.2d at 164 (emphasis inPhelps).
We held in Robinson v. State, 441 So.2d 1045
(Ala.Cr.App. 1983), that a person who intentionally draws a gun in response to or in anticipation of a confrontation with another is aware of the risk that the gun might discharge and, therefore, could not be guilty of mere criminal negligence. See also Williams v. State,506 So.2d 368 (Ala.Cr.App. 1986); Wiggins v. State. We held inWakefield v. State, 447 So.2d 1325 (Ala.Cr.App. 1983), that a jury instruction on criminally negligent homicide was not warranted where the defendant contended that the decedent had threatened him with a pistol and that he was attempting to take the gun away from the decedent when it accidentally discharged. We stated that if the defendant was attempting to shoot the deceased, it could not be negligent homicide, and if he was not attempting to shoot the deceased and the pistol discharged accidentally, it would simply be an accident.
The question before us is whether or not the evidence adduced at trial supports the theory that appellant could have been found guilty of criminally negligent homicide. Appellant denied the charge in toto, claiming that another man, a stranger to him, fired the fatal shot. Nevertheless, the State offered into evidence as part of its case-in-chief incriminating oral statements or admissions alleged to have been made by appellant. These statements, which we have set out above, are evidence in the case.
Could the jury here have reasonably found to exist a type of inadvertent risk creation characteristic of criminally negligent homicide if it had believed any of the admissions or statements to be true? In view of the contradictions between appellant's testimony at trial and the pre-trial statements attributed to him, it is unlikely that the jury would have so found, even had it been charged on criminally negligent homicide; nevertheless, we believe that there was sufficient evidence, if believed by the jury, to so find.
The statement to Officer Dyal which was attributed to appellant to the effect that appellant and the deceased were involved in a domestic altercation and that one of them had produced a weapon, and during the struggle, the weapon had discharged, striking the deceased, is not consistent with the type of inadvertent risk creation contemplated in criminally negligent homicide. This statement would not support an inference that appellant was unaware of the risk and could form no basis for a charge on criminally negligent homicide. *Page 1066 
However, we do find that evidence of criminally negligent homicide, however weak, insufficient or doubtful in credibility, was presented by the following statements: "The gun he had, he had it between his legs. It fell on the sidewalk and went off by itself"; "[S]he had backed into him, and the gun discharged accidentally"; and "[H]e had a pistol in his belt and . . . was trying to get it out of the way." These statements are consistent with the type of inadvertent risk creation contemplated in criminally negligent homicide and are sufficient to form a rational basis for a verdict of guilty by reason of criminally negligent homicide. The statements constitute some evidence that appellant failed to perceive the substantial and unjustifiable risk he had created and was, therefore, only guilty of criminally negligent homicide. Appellant was entitled to have the jury charged accordingly, regardless of whether the evidence was weak, insufficient, or doubtful in credibility.
In this case, the failure of the trial court to instruct on criminally negligent homicide does not warrant a reversal. Before a reversal is required, it must appear to the appellate court that the error complained of has probably injuriously affected the substantial rights of the parties. A.R.A.P. 45. We do not believe that the verdict would have been different if the jury had been charged on criminally negligent homicide. The jury was charged on the elements of manslaughter and, obviously, rejected that theory in returning a verdict of guilty of intentional murder. It is illogical to conclude that, having rejected manslaughter for intentional murder, the jury would have found criminally negligent homicide had it been given the opportunity. In rejecting manslaughter, the jury obviously did not find that appellant's action created a substantial and unjustifiable risk of harm as is contemplated in manslaughter and criminally negligent homicide. Having failed to find this in considering manslaughter, it most certainly would not have found it had the jury considered criminally negligent homicide. "Any speculation that the jury might have found appellant guilty of criminally negligent homicide is dissipated by the fact that it found him guilty of intentional murder." Phelps v. State, 435 So.2d at 167. The statute on criminal negligence rejects and is inconsistent with a specific intent to commit an offense.Howell v. State, 431 So.2d 1328 (Ala. 1983);Phelps v. State. See also Jordan v. State,486 So.2d 485 (Ala. 1986).
We, therefore, find that the trial court's refusal to instruct the jury on criminally negligent homicide did not prejudice appellant, as the refusal was harmless error.
 II
Appellant next questions the sufficiency of the State's evidence to support the jury's verdict finding him guilty of murder. He raised the sufficiency question by motions for judgment of acquittal at the close of the State's case-in-chief and again after all the evidence was in and both sides had rested. The motions were denied. He correctly points out that the evidence supporting the verdict is circumstantial. The trial court correctly charged the jury on the law pertaining to circumstantial evidence.
Circumstantial evidence alone may be sufficient, in conjunction with other facts and circumstances which tend to connect the accused with the commission of the crime, to sustain a conviction. Dolvin v. State, 391 So.2d 133
(Ala. 1980), and cases cited therein; Scanland v.State, 473 So.2d 1182 (Ala.Cr.App.), cert. denied,473 So.2d 1182 (Ala. 1985); Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
When the evidence raises a question of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal by the trial court does not constitute error. Young v.State, 283 Ala. 676, 220 So.2d 843 (1969); Duncan v.State, 436 So.2d 883 (Ala.Cr.App. 1983), cert. denied,464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984). A verdict of conviction will not be set aside on the grounds of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, *Page 1067 
the preponderance of the evidence against the verdict is so decided that it was wrong and unjust. Scanland v. State;Johnson v. State, 378 So.2d 1164 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979). Where there is legal evidence from which the jury by fair inference could find the defendant guilty, this court has no right to disturb the verdict. Johnson v. State. Circumstantial evidence will support a conviction as strongly as direct evidence, provided that the circumstantial evidence points to the guilt of the accused. Moore v. State, 474 So.2d 190
(Ala.Cr.App. 1985). The test to be applied in sufficiency cases where the conviction rests on circumstantial evidence is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether the circumstantial evidence excludes every reasonable hypothesis but guilt, but whether the jury might reasonably so conclude. Moore v. State; Davis v.State, 418 So.2d 959 (Ala.Cr.App. 1982); Cumbo v.State.
We have reviewed the State's evidence in the instant case and find that the State did prove a prima facie case of murder, and it was, therefore, proper for the trial court to submit the case to the jury. In reviewing the facts of this case, we find that there was sufficient evidence from which the jury might have excluded every reasonable hypothesis except that of guilt beyond a reasonable doubt. All the material circumstances in evidence point to appellant's guilt. It is the only conclusion fairly to be drawn from the circumstances. The evidence was sufficient to sustain the verdict, and the overruling of the motions for judgment of acquittal by the trial court was proper.
 III
Appellant next contends that the trial court committed reversible error by sustaining the State's objection to the portion of his counsel's final summation to the jury wherein counsel attempted to argue that the failure of the State to attack the character of appellant during trial impliedly meant that he had good character.
"In a criminal prosecution, it is generally agreed that the State is not allowed to introduce evidence of the accused's bad character until the accused has first entered evidence of his good character." C. Gamble, McElroy's AlabamaEvidence, § 27.01(1) (3d ed. 1977). Throughout the trial of the instant case, appellant never placed his character in issue, and the State made no attempt to assail his character. There simply was no evidence offered as to appellant's character, good or bad. Appellant's argument to the jury in this regard was unsupported by any evidence and, therefore, improper.
 IV
Lastly, appellant contends that it was improper to admit into evidence the statements attributed to him by the State. He argues that the State did not meet its burden of showing that he knowingly and intelligently waived hisMiranda rights. We find no merit to this contention. The first statement or admission offered by the State was a statement made by appellant over the telephone to Ingrid Sims and her mother prior to the time he was taken into custody. This was clearly admissible as a statement against his interest and made under circumstances outside the scope ofMiranda. The two admissions made to police officers were obtained after proper Miranda warnings. The testimony of the officers shows that appellant understood his rights on each occasion, waived those rights, and agreed to talk with the officers. Their testimony further shows that appellant was not threatened or coerced in any manner and that no promises were made or inducements offered him. Appellant testified about the admissions or statements at the suppression hearing and at trial. He denied having made them.
The voluntariness of a statement is a question of law for the court to determine upon preliminary proof, taken outside the presence of the jury, and such finding will not be disturbed on appeal unless it appears contrary to the great weight of the evidence, or is manifestly wrong. Marschkev. State, 450 So.2d 177 (Ala.Cr.App. 1984), *Page 1068 
and cases cited therein. Whether a waiver is voluntarily, knowingly, and intelligently made depends upon the particular underlying facts and circumstances of each case, including the background, experience, and conduct of the accused — the totality of the circumstances. Chandler v.State, 426 So.2d 477 (Ala.Cr.App. 1982) (citingEdwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880,68 L.Ed.2d 378 (1981)); Myers v. State, 401 So.2d 288
(Ala.Cr.App. 1981), and cases cited therein.
We have reviewed the totality of the circumstances surrounding the statements or admissions, and we are convinced that the admissions were voluntarily given after a knowing and intelligent waiver of appellant's Fifth Amendment Rights. We find that the admissions were properly admitted into evidence.
No error harmful to the substantial rights of appellant having been demonstrated on appeal, this case is affirmed.
AFFIRMED.
BOWEN, P.J., and TYSON and TAYLOR, JJ., concur.
McMILLAN, J., concurs in result only.