BOWEN, Presiding Judge.
The appellant, Mack Caldwell III, was convicted after a jury trial of manslaughter in violation of § 13A-6-3, Code of Alabama 1975, and was sentenced as a habitual offender to 10 years’ imprisonment. On this appeal from that conviction, the appellant raises five issues, all of which relate to the sufficiency of the evidence. The recitation of the evidence, Part I, and portions of Part II of this opinion were authored by Judge Patterson.
At trial, the State’s evidence tended to prove the following facts: On August 1, 1991, the appellant and the victim, his girlfriend, Janice Jones, argued and fought. At one point, the appellant found the victim walking along a street, got out of his car, dragged her toward his car, and beat her. He threatened to kill the victim. The victim fled from the appellant on foot that night. The appellant beat the victim often.
At trial, the only evidence produced by the State regarding the events of August 4, 1991, the date of the offense, was the appellant’s videotaped statement and the testimony of Dr. Alan Stilwell. The videotaped statement revealed the following: On August 4, the appellant found a bottle of his cologne in the victim’s purse. He asked the victim if she was going to give the cologne “to her man.” She replied that she *1281 was going to give it to R.B., her stepfather. They began arguing about to whom she was going to give the cologne. The appellant pushed the victim once in the chest with both hands, and she fell backwards in front of a sofa. The appellant stated that he “might have pushed her too hard.” The victim fell on her seat and then to a laying position on the floor near the middle of the sofa. Her back may have hit the sofa. The victim’s eyes were open, and she was making a slight moaning sound. Initially, the appellant thought the victim was “playing.” He sat in a chair and watched her. She then turned her head away and did not move. The appellant picked her up, placed her on the sofa, and covered her with a blanket. The appellant began to worry and called his mother, who told him to call the paramedics. He called the paramedics, who subsequently pronounced the victim dead at the scene.
Dr. Allen Stilwell, a medical examiner employed by the Department of Forensic Sciences, examined the victim’s body. His opinion was that the cause of death was “commotio cordis” or a concussion of the heart, which results from severe, non-penetrating, blunt force trauma to the heart.
According to Dr. Stilwell, commotio cor-dis is believed to lead to death in either of two ways. First, the energy from a direct, sharp, forceful blow to the chest may be transmitted to the heart wall causing one or more coronary arteries to spasm. The result is the loss of blood flow to other parts of the heart, which causes heart stoppage, resulting in death. Second, such a blow may disrupt the conducting system of the heart resulting in an irregular, uncontrollable, ineffective heartbeat resulting in the lack of blood outflow from the heart and eventually resulting in death.
Dr. Stilwell’s examination revealed that the victim’s heart showed no signs of bruising or injury. The victim did, however, have three freshly broken ribs, which alone were insufficient to cause death in a subject of the victim’s age. Dr. Stilwell testified that the broken ribs were consistent with at least one severe blow to the chest and that they were also consistent with a concussion to the heart. The victim’s heart injury was not consistent with merely having been pushed, although it was “possible” that this injury could have been caused by being pushed into a hard object. Dr. Stilwell based his diagnosis on the absence of any toxins or heart defects and the presence of the broken ribs.
Stilwell admitted that commotio cordis was an uncommon condition. In fact, this was the first case in which he personally had given such a diagnosis. He was aware of only five commotio cordis diagnoses in 10 to 11 years at his previous place of employment in Detroit, Michigan. He was also aware that the Armed Forces Institute of Pathology, in reviewing 565 cases of blunt force trauma to the chest, had diagnosed commotio cordis in only two of those cases.
I
The appellant argues that the State failed to negate the possibility that the victim’s injury was caused by medical personnel attempting to revive the victim when that theory was made known to the State before trial. The appellant contends that the paramedics who arrived at the scene attempted to revive the victim and that, in so doing, they actually caused her injury and her death. He relies on Dr. Stilwell’s statement that medical personnel sometimes “render a sudden blow or punch to the chest” in an attempt to restore a normal heartbeat and on the fact that the-victim had broken ribs. The State did not present any testimony by the paramedics.
It is incumbent upon the State to satisfy the jury that the evidence presented excludes every reasonable hypothesis except that of guilt. Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Cr.App.1978), writ denied, 368 So.2d 877 (Ala.1979). There is, however, no evidence that the paramedics attempted to revive the victim. The record reflects that the paramedics pronounced the victim dead. Pictures of the scene, State’s exhibits 1 through 5, do reveal that pads of some type were placed on the victim’s chest; however, there is no evidence that these pads or any other procedure was *1282 used in an attempt to revive the victim. In the absence of any evidence that the paramedics even attempted to revive the victim, the State was not required to disprove that an attempt to revive the victim resulted in her fatal injury. Thus, that paramedics, while attempting to revive the victim, caused her injury and death was not a reasonable hypothesis that the State was required to exclude.
II
The appellant presents four additional arguments challenging the sufficiency of the evidence. He contends that the State’s evidence was insufficient because (1) the State’s evidence was consistent with his theory of the case and his innocence; (2) the State’s evidence did not support a finding that the victim died as a result of being pushed into a sofa; (3) the appellant’s act was not the proximate cause of death; and 4) the state failed to prove that his conduct was reckless.
In regard to his first claim, the appellant contends that the victim received her fatal injury as a result of the paramedics’ attempts to revive her. This argument, however, is without merit because, as discussed in Part I above, there is no evidence that the paramedics attempted to revive the victim.
In regard to his second claim, the appellant argues that the State failed to prove that he pushed the victim into a sofa and proximately caused her fatal injury. In his videotaped statement, the appellant stated that he pushed the victim and that she fell in front of the sofa, away from the wooden arms, and that she may have hit her back against the sofa. When asked if the victim’s injury could have been caused by being pushed into a hard piece of furniture, Dr. Stilwell replied, “[Tjhat’s possible.”
“The weight and probative value to be given to the evidence, the credibility of the witnesses and the resolution of conflicting testimony are for the jury’s determination.” Brown v. State, 588 So.2d 551, 559 (Ala.Cr.App.1991) (citations omitted). Thus, the jury could have concluded from the evidence that the appellant pushed the victim into a hard part of the sofa causing her injury as an amount of force greater than a mere push to the chest was required to cause such an injury.
Third, the appellant argues that his conduct was not the proximate cause and cause in fact of the victim’s injury and subsequent death. In view of the videotaped statement and Dr. Stilwell’s testimony, whether the appellant’s act was the proximate cause and cause in fact of the victim’s death was a question for the jury. See Brown. 588 So.2d at 559.
We reject the appellant’s final contention that the State failed to prove that his conduct was reckless.
The appellant was charged with murder and was convicted of manslaughter. The trial court instructed the jury on the offenses of murder, manslaughter, and criminally negligent homicide. Under the facts of this case, whether the appellant was guilty of manslaughter or criminally negligent homicide was a question for the jury.
“[A] person commits the crime of manslaughter if he recklessly causes the death of another person. Section 13A-6-3(a)(1). The reckless offender is aware of a substantial and unjustifiable risk and ‘consciously disregards’ it. Section 13A-2-2(3); commentary to Section 13A-2-2.
“ ‘A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence.’ Section 13A-6-4. ‘A person acts with criminal negligence ... when he fails to perceive a substantial and unjustifiable risk that the result will oc-cur_’ Section 13A-2-2(4). In both manslaughter and criminally negligent homicide ‘[t]he risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.’ Sections 13A-2-2(3) and (4).
“The only difference between manslaughter under Section 13A-6-3(a)(l) and criminally negligent homicide is the *1283 difference between recklessness and criminal negligence. ‘The reckless offender is aware of the risk and “consciously disregards” it. On the other hand, the criminally negligent offender is not aware of the risk created (“fails to perceive”) and, therefore, cannot be guilty of consciously disregarding it.' Commentary to Section 13A-2-2. ‘The difference between the terms “recklessly” and “negligently,” ... is one of kind, rather than degree. Each actor creates a risk of harm. The reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it.’ C. Torcía, 1 Wharton’s Criminal Law Section 27 (14th ed. 1978) (emphasis in original).
“Negligence is ‘distinguished from acting purposefully, knowingly, or recklessly in that it does not involve a state of awareness. It is the case where the actor creates inadvertently a risk of which he ought to be aware, considering its nature and degree, the nature and purpose of his conduct and the care that would be exercised by a reasonable person in his situation.’ Commentary to Section 13A-6-4.”
Kitsos v. State, 574 So.2d 979, 981-82 (Ala. Cr.App.1990) (quoting Phelps v. State, 435 So.2d 158, 164 (Ala.Cr.App.1983)) (last emphasis added in Phelps). The reckless offender “is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists.” Ala.Code 1975, § 13A-2-2(3). The criminally negligent offender “fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists.” § 13A-2-2(4).
This appellant was neither aware nor should he have been aware of the specific risk of “ ‘commotio cordis’ or a concussion of the heart, which results from severe, nonpenetrating, blunt force trauma to the heart.” The risk here is not specifically “commotio cordis.” “[T]he risk of harm which is required for manslaughter is risk of death or serious bodily injury.” 1 W. LaFave and A. Scott, Substantive Criminal Law § 3.7(e) at 336 (1986). While the appellant was not aware (nor should he have been) of the specific risk of “commo-tio cordis,” the jury could very well have found that he was clearly cognizant of the risk of death or serious bodily injury from his powerful and traumatic blow to the victim’s chest. The fact that death occurred in an unanticipated manner is simply irrelevant under these circumstances. Any ordinary reasonable person would be aware that someone who is either “pushed” or hit in the chest with a blow forceful enough to break three ribs might and probably would sustain serious bodily injury. This was a question for the jury and this Court should honor its determination. The issue of the appellant’s guilt of manslaughter or criminally negligent homicide was properly submitted to the jury.
The judgment of the circuit court is affirmed.
AFFIRMED.
TAYLOR and McMILLAN, JJ., and JONES, Supernumerary Justice of the Alabama Supreme Court sitting by special assignment of the Chief Justice, concur.
PATTERSON, J., dissents with opinion.
MONTIEL, J., recuses himself.