The appellant, John Lionel Buskey, was indicted on February 5, 1993, for murder, a violation of § 13A-6-2, Code of Alabama 1975. The indictment alleged that the appellant intentionally caused the death of his father, John Lee Buskey, by shooting him with a gun. The jury found the appellant guilty as charged in the indictment, and the appellant was sentenced to life in the penitentiary. Approximately two years before the shooting, Cherlyn Harding and the appellant had had a relationship and that relationship had produced a child, Germaine. The appellant was unable to support this child financially, so the appellant's parents allowed Ms. Harding, Germaine, and Timothy, Ms. Harding's son by a previous relationship, to live in their house. The appellant also lived *Page 607 
with his parents. Mrs. Buskey testified that the relationship between the appellant and she and his father had deteriorated in the years before Ms. Harding moved in. Confrontations between the appellant and Mr. Buskey included verbal and physical exchanges.
On December 3, 1992, some hours after the shooting, the appellant turned himself in to police. In his statement, the appellant told the police that he and Ms. Harding had gotten into a fight while they were in Ms. Harding's car. The appellant told police that he and Ms. Harding yelled at each other and that blows were exchanged. The fight then moved out of the car and continued in front of the Buskey residence. Mr. Buskey intervened and told both parties to go inside the house. Once inside, the appellant and his father argued, and the appellant said that he told his father, "I'll show you who's bluffing." The appellant said that he ran upstairs to get his rifle which he intended to use to scare and intimidate Ms. Harding. The appellant told police that he and his father struggled over the rifle and that it discharged accidentally, killing Mr. Buskey. The appellant said he then panicked, ran, and later decided to turn himself in to police. At trial, two witnesses, Calvin Cochran and Robert Leon Williams, testified that on the night of the shooting they heard a woman scream and that, upon arriving at the scene, they saw two men arguing, and the woman continued to scream. Mr. Cochran said that he left to call the police. Mr. Williams testified that he saw all three individuals go into the Buskey residence and that he then heard a gunshot from inside the house. According to Mr. Williams, within seconds after the gunshot, a woman came running out the front door of the house. The appellant then came out of the front door holding a rifle and yelling to the woman, "You think I'm bluffing, you think I'm bluffing." Mr. Williams said that the appellant then ran back into the house and that he did not see him again. He said that he did see Mrs. Buskey arrive alone at the house, enter after the gunshot had been fired, and a short time later, leave with two small children. Mr. Williams said that she took the children to a neighbor's house, and then returned. By that time police had arrived and would not let anyone enter the house.
Officers Charles Athey and G.P. Shirley were the first police officers to arrive at the scene. Officer Charles Athey testified that he saw a black male come out of the front door of the house, then run back in. Officer G.P. Shirley, who was driving the patrol car, testified that he heard what sounded like a fence in the backyard rattling as someone jumped over the fence. The officers testified that after Mrs. Buskey told them about the shooting, they requested paramedics, and entered the residence. They found Mr. Buskey in the upstairs hall, on the floor, apparently dead. The officers secured the scene and awaited the paramedics and detectives.
Officer H.D. Kenney, an evidence technician with the Montgomery Police Department, testified that after arriving at the scene, he began to "process the scene" and collect evidence. As part of this procedure, Officer Kenney photographed and videotaped the scene, and collected physical evidence, including a spent shell casing, an empty box of shells, and a gun case, all of which were in the appellant's bedroom. Officer Kenney later found the shirt that the appellant was wearing at the time of the shooting in a duffel bag under a bed at the home of Joann Richardson, the appellant's girlfriend. The appellant's rifle was hidden under a sofa in Ms. Richardson's bedroom. Eric Wine, a firemedic sergeant with the Montgomery Fire Department, testified that upon arriving at the scene of the shooting, he found Mr. Buskey in the hallway lying on his right side with his right arm pinned beneath his body. Mr. Buskey was pronounced dead at the scene.
Dr. J.R. Lauridson, a state medical examiner, offered expert forensic testimony regarding the wounds on Mr. Buskey's body and the cause of death. Dr. Lauridson testified that, in his opinion, the abrasions found on Mr. Buskey's chest were caused by a blow from the butt of a rifle. Dr. Lauridson also testified that a bullet had entered Mr. Buskey's chest, had penetrated his heart, had exited the right side of his chest, and had bruised the inside of his right arm without *Page 608 
exiting through his jacket, indicating that Mr. Buskey's right arm was pinned against his body at the time of the shooting. The left arm showed no traces of gunpowder residue, indicating that at the time of the shooting it was being held out away from the body, and was out of the direct line of fire.
Craig Bailey, an expert in trace evidence at the Department of Forensic Sciences, testified that the markings on the butt-plate of the appellant's rifle matched the marks found in the abrasions on Mr. Buskey's chest.
Joe Saloom, a firearms and tool mark examiner with the Department of Forensic Sciences, offered expert testimony concerning the operation of the rifle and the physical evidence that showed how it was used to shoot Mr. Buskey. Mr. Saloom testified that he had fired the rifle and had matched the rifling marks and striations on the test bullet with the bullet recovered from Mr. Buskey and determined that they were fired by the same rifle. He also testified that he compared the shell casings from the testing with the actual shell casing taken from the scene and that they matched. Mr. Saloom further testified that the rifle was within a few feet of Mr. Buskey's chest when it was fired.
The appellant testified that he and Ms. Harding had had a serious argument that began in her car on December 3 and that moved to the Buskey's front yard and into the house, where the appellant's father, Mr. Buskey, became involved. The appellant testified that he went upstairs to get his gun intending to intimidate and to scare Ms. Harding, and that his father approached him and there was a struggle in the upstairs hallway. The appellant testified that during this struggle the rifle discharged and Mr. Buskey was fatally shot. The appellant's memory of the details of the shooting was unclear; he stated that he could not remember several intervals in this time period and that "things just happened so fast." He testified that after the shooting, he panicked and ran out the front door, then turned around, ran back into the house, ran out the back door, jumped over a fence in the backyard, and ran to Joann Richardson's house. There, he said, he put the rifle under a sofa in her bedroom and removed his shirt, putting it in a duffel bag, which he put under her bed. The appellant testified that later that night, he turned himself in to police and gave a statement. The appellant testified that Mr. Buskey said to Ms. Harding something to the effect of "He's just bluffing." The appellant also testified that he was angry with Ms. Harding for not moving out and at his father for not making her leave. He then acknowledged the steps that had to be taken to fire the rifle: loading a round in the chamber, cocking the rifle, pulling the trigger safety lever up, then pulling the trigger. The appellant could not explain the absence of any evidence of a struggle at the instant of the shooting. He testified that he did not call for medical assistance for his father after the shooting and did not call later to check on his father. The appellant also could not explain the presence of the abrasions caused by the butt of the rifle on his father's chest.
The defense then asked to be allowed to put Ms. Harding's six-year-old son, Timothy, on the stand. He apparently was an eyewitness to the shooting. After the defense asked Timothy a few questions, the trial court determined that the child was not competent to testify. The defense objected and the trial court overruled the objection.
Joann Richardson, the appellant's girlfriend, testified next. She testified that on several occasions over a period of a couple of years, the appellant had brought his gun to her house and that when he did she made him put it under the sofa in her bedroom. She also testified that he had bought the gun for hunting and that he had mentioned that he also kept it for protection, because he had recently been robbed.
 I
The appellant challenges the sufficiency of the evidence, arguing that the State did not prove that the appellant intended to cause the death of John Lee Buskey and that, therefore, the trial court should have granted his motion for a judgment of acquittal. Section 13A-6-2(a)(1), Code of Alabama 1975, defines murder as follows:
"(a) A person commits the crime of murder if: *Page 609 
 "(1) With intent to cause the death of another person, he causes the death of that person or of another person . . ."
To prove that an accused is guilty of murder, the State must prove beyond a reasonable doubt (1) the death of the victim named in the indictment, (2) the victim's death was caused by the criminal agency of the appellant, and (3) that the appellant intended to cause the death of the victim. Martin v.State, 610 So.2d 1195 (Ala.Crim.App. 1992); Ex parte Bailey v.State, 590 So.2d 354 (Ala. 1991); Breeding v. State,523 So.2d 496 (Ala.Crim.App. 1987).
"The requisite intent in a murder charge 'may be inferred from the character of the assault, the use of a deadly weapon, and all other attending circumstances surrounding the death of the deceased.' Swann v. State, 412 So.2d 1253, 1359
(Ala.Cr.App. 1982)." Cox v. State, 500 So.2d 1296, 1299
(Ala.Crim.App. 1986).
 "Intent may be inferred from the use of a deadly weapon. Fears v. State, 451 So.2d 385
(Ala.Crim.App. 1984); Young v. State, 428 So.2d 155
(Ala.Crim.App. 1982). . . . Further, circumstantial evidence alone may be sufficient in conjunction with other facts and circumstances which tend to connect the accused with the commission of the crime to sustain a conviction. Dolvin v. State, 391 So.2d 133 (Ala. 1980) and cases cited there; Cumbo v. State, 368 So.2d 871 (Ala.Crim.App. 1979), cert. denied, 368 So.2d 877 (Ala. 1979)."
Scanland v. State, 473 So.2d 1182 (Ala.Crim.App. 1985), cert.denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985) (some citations omitted); see also, Martin v. State,610 So.2d 1195 (Ala.Crim.App. 1992).
Viewing the evidence in the light most favorable to the State, it is clear that the State presented a prima facie case of murder. The State established that John Lee Buskey had died as a result of a single shot from a rifle belonging to the appellant. The jury could infer, from the evidence, that the shot that killed the victim was fired by the appellant. Although the appellant testified that the killing was not intentional, the appellant's intent to cause the victim's death could be inferred from (1) the use of a deadly weapon, (2) the appellant's angry words to his father immediately before the shooting, (3) the forensic evidence indicating that Mr. Buskey had been knocked to the floor by blows to the chest and then shot by the appellant, (4) the fact that several steps had to be taken before the rifle would fire. The trial court properly denied the appellant's motion for a judgment of acquittal.
 II
The appellant contends that the trial court erred in denying his motion for a change of venue based on the alleged widespread publicity surrounding the killing. Rule 10.1(a), A.R.Crim.P., states, "[T]he defendant shall be entitled to a change of the place of trial to the nearest county free from prejudice if a fair and impartial trial and unbiased verdict cannot be had for any reason." The burden of proof is on the defendant "to show to the reasonable satisfaction of the court that a fair and impartial trial and an unbiased verdict cannot be reasonably expected in the county in which the defendant is to be tried." Rule 10.1(b). In striking the jury, the trial court conducted individual voir dire of the entire 58-member venire to assess each veniremember's ability to decide the case on the evidence alone. Of these 58 veniremembers, four were challenged by the defense because they had indicated that they might not be able to disregard the publicity and render an impartial decision. Of these four challenges, three were granted. At an evidentiary hearing on this motion, the defense called Alvin Holmes, Joe Reed, John Knight, and Charles Langford, all state legislators and friends of the deceased. Mr. Holmes testified that while he was certain that many people had heard of Mr. Buskey's death, not many people he came in contact with were talking about it. Mr. Reed testified that although he had talked to some people about the killing, it was not a topic of everyday conversation, even considering the media coverage. Mr. Knight testified that although he did see some newspaper articles and television news broadcasts about the killing, most of his conversations regarding the shooting were with members of his family. Mr. Langford testified *Page 610 
that although there had been much publicity surrounding the killing, he would not think that this media coverage would influence the members of the jury venire.
 " 'The determination of whether or not to grant a motion for change of venue is generally left to the sound discretion of the trial judge, because he has the best opportunity to assess any prejudicial publicity against the defendant and any prejudicial feeling against the defendant in the community which would make it difficult for the defendant to receive a fair and impartial trial.' Nelson v. State, 440 So.2d 1130, 1132
(Ala.Crim.App. 1983)). See also Trahan v. State, 450 So.2d 1102 (Ala.Crim.App. 1984.)"
Burton v. State, 651 So.2d 641 (Ala.Crim.App. 1993). The trial court's ruling on a motion for a change of venue will not be reversed absent an abuse of discretion. Sockwell v. State, [Ms. CR-89-0225, December 30, 1993] ___ So.2d ___ (Ala.Crim.App. 1993); Mullis v. State, 545 So.2d 205, 209
(Ala.Crim.App. 1989); Knighten v. State, 507 So.2d 1015, 1021
(Ala.Crim.App. 1986). To meet the burden of proof necessary to require a change in venue because of pretrial publicity, the defendant must show more than that the case generated widespread publicity. Oryang v. State, 642 So.2d 979
(Ala.Crim.App. 1993). Jurors can reach an unbiased verdict without being totally ignorant of the facts and issues involved in a specific case. Nelson v. State, 440 So.2d 1130 at 1131 (Ala.Crim.App. 1983). " 'It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' " Ex parte Fowler, 574 So.2d 745,747 (Ala. 1990) (quoting Nelson at 1131); Irvin v. Dowd,366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The only evidence of pretrial publicity presented at the hearing on the motion for a change of venue involved the print media. The newspaper articles cited presented objective accounts of the shooting and were not "so sensational, accusational, or denunciatory that a fair and impartial trial was impossible."Patton v. State, 246 Ala. 639, 21 So.2d 844 (1945); Thompson v.State, 581 So.2d 1216, 1233 (Ala.Crim.App. 1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992). The appellant did not show that a fair and impartial trial could not be had in Montgomery County. The trial court did not abuse its discretion in denying the appellant's motion for a change of venue.
 III
The appellant contends that the trial court erred in not charging the jury on the lesser included offense of criminally negligent homicide. In charging the jury, the trial judge instructed the jury on murder and on the lesser included offense of manslaughter, but refused, over defense objection, to instruct the jury on the lesser included offense of criminally negligent homicide. Section 13A-6-4(a), Code of Alabama 1975, provides: "A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence." "Criminal negligence" is defined in § 13A-2-2(4), as follows:
 "A person acts with criminal negligence with respect to a result . . . when he fails to perceive a substantial and unjustifiable risk that the result will occur. . . . The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."
The trial court, as noted above, instructed the jury as to the lesser included offense of manslaughter. § 13A-6-3(a)(1), Code of Alabama 1975, provides: "A person commits the crime of manslaughter if . . . [h]e recklessly causes the death of another person." Section 13A-2-2(3), defines "recklessly" as follows:
 "A person acts recklessly with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur. . . . The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."
The appellant implies in his brief to this court that the similarities in the relationship in the statutory definitions of manslaughter *Page 611 
and criminally negligent homicide require an instruction on the latter offense because an instruction was given on the former. However, these two offenses are distinguishable by the culpable mental state:
 " 'The only difference between manslaughter under Section 13A-6-3(a)(1) and criminally negligent homicide is the difference between recklessness and criminal negligence. " 'The reckless offender is aware of the risk and 'consciously disregards' it. On the other hand, the criminally negligent offender is not aware of the risk created ('fails to perceive') and, therefore, cannot be guilty of consciously disregarding it." Commentary to Section 13A-2-2. "The difference between the terms 'recklessly' and 'negligently,' . . . is one of kind, rather than degree. Each actor creates a risk of harm. The reckless actor is aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it." C. Torcia, 1 Wharton's Criminal Law Section 27 (14th ed. 1978) (emphasis in original).
 " 'Negligence is "distinguished from acting purposefully, knowingly, or recklessly in that it does not involve a state of awareness. It is the case where the actor creates inadvertently a risk of which he ought to be aware, considering its nature and degree, the nature and purpose of his conduct and the care that would be exercised by a reasonable person in his situation." Commentary to Section 13A-6-4.' "
Caldwell v. State, 615 So.2d 1280, 1282-83
(Ala.Crim.App. 1993), quoting Kitsos v. State, 574 So.2d 979, 981-82
(Ala.Crim.App. 1990) in turn quoting Phelps v. State, 435 So.2d 158,164 (Ala.Crim.App. 1983) (last emphasis added in Phelps);Jones v. State, 514 So.2d 1060, 1065 (Ala.Crim.App. 1987),cert. denied, 514 So.2d 1068 (Ala. 1987). "The submission to the jury of manslaughter as a lesser included offense of murder does not necessarily entitle a defendant to a jury charge on criminally negligent homicide as a lesser included offense.People v. Duncan, 83 Misc.2d 608, 372 N.Y.S.2d 879, 882 (1975),affirmed, 55 A.D.2d 690, 389 N.Y.S.2d 41 (1976)." Phelps, 435 So.2d at 166.
 " ' " '[D]ue process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction.' Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). 'Under Alabama law, the rule in non-capital cases is that a lesser included offense instruction should be given if "there is any reasonable theory from the evidence which would support the position." ' Hopper, citing Fulghum [v. State, 291 Ala. 71, 277 So.2d 886 (1973).] By statute, '[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.' Alabama Code Section 13A-1-9(b) (1975)." '
 "Woods v. State, 485 So.2d 1243, 1245
(Ala.Cr.App. 1986), quoting Phelps v. State, supra." Lovell v. State, 521 So.2d 1346, 1350-51
(Ala.Crim.App. 1987).
In this case, the evidence tended to show that the appellant's actions were not the result of negligence. Threatening statements followed by retrieving and firing a rifle are strong indications of an intentional, or at the least, reckless act.
 " 'One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence. Appellant was guilty of either murder or manslaughter or he was guilty of nothing at all.'
 "Robinson v. State, 441 So.2d 1045, 1047
(Ala.Cr.App. 1983). See also Wiggins v. State, 491 So.2d 1046 (Ala.Cr.App. 1986) (holding that there was no basis for giving a charge on criminally negligent homicide where the appellant testified that he pulled a gun merely to 'scare off' the victim and that the gun discharged by accident during a struggle)."
Lovell, 521 So.2d at 1351. We do not believe there was any rational basis for instructing the jury on criminally negligent homicide as a lesser included offense. Williams v. State,518 So.2d 888, 889 (Ala.Crim.App. 1987).
Even, however, if we determined that an instruction on criminally negligent homicide *Page 612 
was required, failure to give the instruction was harmless error in this case.
 " 'Any speculation that the jury might have found appellant guilty of criminally negligent homicide is dissipated by the fact that it found him guilty of intentional murder.' Phelps v. State, 435 So.2d at 167. The statute on criminal negligence rejects and is inconsistent with a specific intent to commit an offense. Howell v. State, 431 So.2d 1328
(Ala. 1983); Phelps v. State. See also Jordan v. State, 486 So.2d 485 (Ala. 1986)."
Jones v. State, 514 So.2d at 1066.
At oral argument, counsel for the appellant raised the issue of the trial court's refusal to allow six-year-old Timothy, who witnessed the shooting, to testify. This issue was not addressed in the appellant's brief. This court is not obligated to consider issues not presented in briefs on appeal.Hoppins v. State, 451 So.2d 365 (Ala. 1983); Rule 45B, A.R.App.P.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.